Sage S. Stone (State Bar No. 304086)
sstone@blackstonepc.com
Zachary T. Gershman (State Bar No. 328004)
zgershman@blackstonepc.com
Matthew R. Soto (State Bar No. 353499)
msoto@blackstonepc.com
**BLACKSTONE LAW, APC**
8383 Wilshire Boulevard, Suite 745
Beverly Hills, California 90211
Telephone: (310) 622-4278/ Fax: (855) 786-6356

*Attorneys for* Plaintiff JACOB SAYEEDUL, JEFFREY ALLTON, ASHLEY BLAIR STEELY, JOSEPH VASCONCELOS, TEENA MARIE OJEDA, and AGUSTIN RODRIGUEZ, individually and on behalf of other similarly situated employees

**UNITED STATED DISTRICT COURT**

**CENTRAL DISTRICT COURT OF CALIFORNIA**

JACOB SAYEEDUL, JEFFREY ALLTON, ASHLEY BLAIR STEELY, JOSEPH VASCONCELOS, TEENA MARIE OJEDA, and AGUSTIN RODRIGUEZ, individually, and on behalf of other similarly situated employees,

Plaintiff,

vs.

AMAZON RETAIL LLC; AMAZON.COM, INC.

Defendants.

Case No.: CV 26-1933-GW-Ex

**SECOND AMENDED CLASS ACTION COMPLAINT**

**(1) Violation of LAMC Ch. XVIII, Art. 5, § 185 *et seq.* (City of Los Angeles Fair Work Week Ordinance)**
**(2) Violation of Cal. Labor Code §§ 1194, 1197 and 1197.1 (Minimum Wages)**
**(3) Violation of Cal. Labor Code §§ 510 and 1198 (Unpaid Overtime)**
**(4) Violation of Cal. Labor Code §§ 226.7 and 512(a) (Meal Break Violations)**
**(5) Violation of Cal. Labor Code § 226.7 (Rest Break Violations)**

**(6) Violation of Cal. Labor Code § 226(a) (Wage Statement Violations)**

**(7) Violation of Cal. Labor Code §§ 201, 202, and 203 (Untimely Final Wages)**

**(8) Violation of Cal. Business & Professions Code § 17200, *et seq*.**

**DEMAND FOR JURY TRIAL**

Plaintiff JACOB SAYEEDUL ("Mr. Sayeedul") JEFFREY ALLTON ("Mr. Allton"), ASHLEY BLAIR STEELY ("Mr. Steely"), JOSEPH VASCONCELOS ("Mr. Vasconcelos"), TEENA MARIE OJEDA ("Ms. Ojeda"), and AGUSTIN RODRIGUEZ ("Mr. Rodriguez"), (collectively, "Plaintiffs"), individually and on behalf of other similarly situated employees, alleges as follows against Defendant AMAZON RETAIL LLC, and Defendant AMAZON.COM, INC. (collectively, "Defendants" or "Amazon"):

## INTRODUCTION

1. In 2020, Amazon began opening Amazon Fresh stores in California touting technology-forward systems that would enhance the customer experience, realize efficiencies, and revolutionize the retail grocery industry. One of Amazon Fresh's lesser-known initiatives aimed at providing a competitive advantage was an automated or semi-automated inventory management system that would order store inventory supposedly based on real-time inventory counts and sophisticated forecasting models. The black box inventory management system had near-complete autonomy over all ordering in California and operated with almost zero input from local management—no staff at stores could refuse shipments, and staff generally had little to no autonomy to determine what product arrived at their stores. In doing so, Amazon sought to minimize losses, ensure product supply matched demand at stores, and streamline sourcing and logistics. In reality, Amazon unleashed an unaccountable ordering system that dumped unmanageable amounts of product on understaffed stores.

2. From the moment a store opened in California, stores lacked adequate staffing to handle the fire hose of product, called "freight," arriving in increasingly crowded back of house storerooms. Compounding the problem, soon after its initial store opening push in California, Amazon determined its initial store opening staffing levels were "bloated" and began cutting store associate hours and closing store associate roles by attrition or layoffs. With insufficient store associates available to receive, unload, unwrap, unbox, and stock freight, the responsibility fell to managers, who, by virtue of

their salary, did not receive overtime pay and were not required to adhere to break rules. The task was both gargantuan and Sisyphean; California-based assistant and store managers worked between 10 and 13 hours a day on average without being paid overtime or taking any breaks, with some working as many as 16 hours a day, five or six (and sometimes seven) days a week, spending the vast majority of their time handling freight and other store associate-level work.

3. Meanwhile, Amazon grappled with a lack of inertia driving foot traffic into stores. Faced with increasingly unprofitable stores despite a 2023 rebranding push during which it opened additional stores and remodeled existing stores, Amazon cut labor by attrition and periodic layoffs all the way into 2026. In January 2026, Amazon announced full closure of all its Amazon Fresh stores, and by the end of March 2026, all California stores had closed or transitioned to Whole Foods.

4. Plaintiffs bring this action against Amazon for engaging in a systematic scheme of wage abuse against their salaried, exempt managers working at Amazon Fresh stores in California at any time during the period from four years prior to the date of the filing of the original Complaint through final judgment ("Class Members"). The salaried, exempt managers includes those in the Assistant Manager title, alternatively called Manager 1 or 2 or L4 or L5, respectively, as well as those in the Store Manager title, called a Manager 3 or L6. These titles sought to attribute to such employees managerial or executive responsibility or the authority to exercise independent judgment, when in reality these employees were not permitted or authorized to exercise independent judgment while working for Amazon, and spent more than 50% of their time performing non-managerial, non-administrative, non-executive, and non-professional duties.

5. By manipulating the titles given to these employees and changing them from hourly-paid employees to salaried employees, Amazon misclassified them as exempt from certain provisions of the California Labor Code, and the orders and standards promulgated by the California Department of Industrial Relations, Industrial

Welfare Commission, and Division of Labor Standards, which has resulted in the failure of Amazon to pay Plaintiffs and those similarly situated all wages due to them, including, among other things, all wages owed for all time worked (including minimum wages, straight time wages, and overtime wages). As a result of the misclassification, Amazon failed to provide Plaintiffs and Class Members with compliant meal periods and failed to authorize and permit rest periods, failed to timely pay them all wages due during their employment, failed to timely pay them all wages due upon termination of their employment, failed to provide them with accurate itemized wage statements, failed to maintain accurate payroll records, and failed to reimburse them for necessary business expenses.

6. Plaintiffs further alleges that, starting on April 1, 2023, Amazon failed to provide Plaintiffs and a subclass of Class Members who worked in the City of Los Angeles with compliant work schedules and notice thereof, failed to provide premium wages for non-compliant schedule changes, failed to properly compensate them for working "clopening" shifts, and required them to find their own coverage when missing work due to illness or another protected purpose.

7. Through this action, Plaintiffs seek to recover all available remedies including but not limited to actual and liquidated damages and attorney's fees and costs.

## **JURISDICTION AND VENUE**

8. This is a class action lawsuit brought pursuant to Rule 23 of the Federal Rules of Civil Procedure.

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act which provides for diversity jurisdiction in class action cases involving out-of-state defendants.

10. This Court has jurisdiction over all Defendants because, upon information and belief, Defendants are either citizens of California, have sufficient minimum contacts in California, and/or otherwise intentionally avail themselves of the California market so as to render the exercise of jurisdiction over them by the California courts

consistent with traditional notions of fair play and substantial justice.

11. Venue is proper in this Court because, upon information and belief, Defendants maintain offices, have agents, employ individuals, and/or transact business in the State of California, County of Los Angeles, and City of Los Angeles, including at 5101 Lankershim Blvd, North Hollywood, CA 91601. Many of the acts, events, and violations alleged herein relating to Plaintiffs occurred in the State of California, including in the County of Los Angeles.

## THE PARTIES

12. At all times herein mentioned, Mr. Sayeedul was a resident of Los Angeles County in the State of California. Mr. Sayeedul worked for Amazon from approximately December 2, 2020, to September 16, 2025. Beginning in March 2022, Mr. Sayeedul held the title of "Assistant Manager" (Job Level 4 or "L4"). On or around July 2025 he was offered an internal transfer to Assistant Manager in North Hollywood and was generally stationed at Amazon's North Hollywood, CA location, but performed work all across Southern California, including at stores in Woodland Hills, Northridge, and Ladera Heights.

13. Up until November 2024, Mr. Allton was a resident of Los Angeles County in the State of California. As of today, he resides in Overland Park, Kansas. Mr. Alton worked for Amazon from approximately December 2020 to January 27, 2024. Mr. Allton, held the title of "Overnight Manager," an L4 Job, at Amazon's Woodland Hills, CA location.

14. At all times herein mentioned, Mr. Steely was a resident of Los Angeles County in the State of California. Mr. Steely worked for Amazon as an Assistant Manager from approximately May 2021 to February 28, 2025. Mr. Steely worked at Amazon's North Hollywood, Northridge, and Woodland Hills, CA location.

15. At all times herein mentioned, Mr. Vasconcelos was a resident of Los Angeles County in the State of California. Mr. Vasconcelos worked for Amazo from approximately February 2020 to April 28, 2026. Mr. Vasconcelos worked for Amazon

as both an L4 and L5 Assistant Store Manager and Assistant Manager at Defendants' Woodland Hills and North Hollywood, CA locations.

16. At all times herein mentioned, Ms. Ojeda was a resident of Los Angeles County in the State of California. Ms. Ojeda worked for Amazon from approximately February 15, 2021, to April 28, 2026. Beginning in May 14, 2021, Ms. Ojeda held the title of "Zone Lead" (Job Level "L3") then November 1, 2021 changed to Level L4 at Amazon's Cerritos, Long Beach, and Fullerton CA locations.

17. At all times herein mentioned, Mr. Rodriguez was a resident of Los Angeles County in the State of California. Mr. Rodriguez worked for Amazon from approximately April 14, 2023, to April 28, 2026. Mr. Rodriguez held the title of "Store Manager" (Job Level "L6") at Amazon's Ladera Heights and Torrance CA location.

18. At all times herein mentioned, Defendant AMAZON RETAIL LLC was and is an employer who does business in California, with locations throughout the state of California, and whose employees are engaged or have been engaged throughout the City and County of Los Angeles and the State of California, including at 5101 Lankershim Blvd, North Hollywood, CA 91601.

19. At all times herein mentioned, Defendant AMAZON.COM INC. was and is an employer who does business in California, with locations throughout the state of California, and whose employees are engaged or have been engaged throughout the City and County of Los Angeles and the State of California, including at 5101 Lankershim Blvd, North Hollywood, CA 91601.

20. Plaintiff is informed and believes, and thereon alleges, that the acts and omissions alleged herein were performed by, or are attributable to, AMAZON RETAIL LLC and/or AMAZON.COM INC., each acting as the agent, employee, alter ego, within an integrated enterprise, and/or joint venturer of, or working in concert with, each of the other co-Defendants and within the course and scope of such agency, employment, joint venture, or concerted activity with legal authority to act on the others' behalf. The acts of Defendants represent and were in accordance with

Defendants' official policies and/or procedures.

21. As detailed below, AMAZON RETAIL LLC and AMAZON.COM INC. shared interrelated operations, including by sharing personnel management systems and policies, including structuring compensation for Class Members as salaried, exempt employees and commingling employees' wage compensation with awards of restricted stock units for nonpublic shares of AMAZON.COM INC. (awards of which were subject to AMAZON.COM INC.'s board approval), maintaining common management structure with AMAZON RETAIL LLC being led by various AMAZON.COM INC. executives (such as Jason Buechel, who oversaw AMAZON.COM INC.'s Worldwide grocery business), sharing centralized control of labor relations at AMAZON.COM INC.'s headquarters in Seattle, Washington where a common personnel management department of AMAZON.COM INC. managed personnel decisions for Class Members, set and controlled policies, and set and managed staffing levels.

22. At all relevant times, given the close relationship between both AMAZON RETAIL LLC and AMAZON.COM INC., Defendants were the employers of Plaintiffs within the meaning of all applicable state laws and statutes. Defendants directly or indirectly controlled or affected the working conditions, wages, working hours, and conditions of employment of Plaintiffs so as to make each of said Defendants employers and employers liable under the statutory provisions set forth herein. Furthermore, Defendant AMAZON RETAIL, LLC appeared as the employee of record of Plaintiffs and Class Members on their wage statements, while Defendant AMAZON.COM, INC. represented themselves as also being Plaintiffs and Class Members' employer in multiple documents identifying Defendant AMAZON.COM, INC. as their employer, including in a Confidentiality and Inventions Assignment agreement which Plaintiffs and Class Members were required to sign to work for Defendants.

**AMAZON.COM, INC.**

**CONFIDENTIALITY AND INVENTION ASSIGNMENT AGREEMENT**

This Confidentiality and Invention Assignment Agreement ("**Agreement**") is made by and between Amazon.com, Inc., a Delaware corporation, and Agustin Rodriguez ("**Employee**").

**RECITALS**

**A.** Employee enters into this Agreement in connection with Employee's acceptance of employment with Amazon.com, Inc. or its subsidiary or affiliate, and any future employment with Amazon.com, Inc. or another of its subsidiaries or affiliates (depending on the circumstances, each an "**Employer**");

**B.** As used in this Agreement, "**Amazon**" means Amazon.com, Inc. and any entity that controls, is controlled by, or is under common control with Amazon.com, Inc., including without limitation its subsidiaries and affiliates;

**C.** Employee's acceptance of this Agreement is an express condition of Employee's employment with Employer, and is made by Employee in consideration of such employment, including the compensation, benefits and confidential information provided now and in the future to Employee by Employer, which Employee acknowledges are of significant benefit to Employee; and

**D.** Employee's continued employment with Employer is expressly conditioned on Employee's good faith agreement to comply with this Agreement.

23. Indeed, Defendant AMAZON.COM, INC., shared personnel management systems, processes, and policies with AMAZON RETAIL, LLC. For example, the above confidentiality agreement which presented Amazon.com as the employer was signed by Beth Galetti, who was at the time and continues to be a Senior Vice President for Human Resources at Defendant AMAZON.COM, INC.Furthermore, Defendant AMAZON.COM, INC. also asserted control over the compensation over Plaintiffs and Class Members. Specifically, Plaintiffs and Class Members were awarded with restricted stock units as part of their compensation with Defendants. These restricted stock units were non-public shares of Defendant AMAZON.COM, INC common stock. Moreover, AMAZON.COM, INC. retained full control over the awarding of these shares to Plaintiffs and Class Members as stated in compensation documents provided to Plaintiffs and Class Members, an example of which is reflected in the screenshot on the following page taken from a letter from management to Plaintiff JOE VASCONCELOS on September 23, 2020.

Amazon Retail LLC
September 23, 2020

Joseph Vasconcelos

Dear Joseph:

We value high-level performance, and we are proud to recognize your accomplishments.

Subject to approval by the Board of Directors of Amazon.com, Inc., you will be granted a special off-cycle restricted stock unit award with respect to 2 shares of Amazon.com, Inc. common stock.

Your award will be documented by delivery to you of a Restricted Stock Unit Award Agreement specifying the terms and conditions of the award. The delivery of this award agreement can take up to three months from the effective date of this change. Please review and accept the award agreement posted to the Amazon Stock portal within 30 days of receipt. The Amazon Stock portal is available on the network at **https://www.amazonstock.com**.

Thanks again for your efforts. Please contact me or your HR Business Partner, Sadaf Nasir, with any questions.

Sincerely,

Michael Shalva Lortkipanidze
Manager II, Retail Store

3/38

24. Furthermore, following AMAZON.COM INC.'s decision to close down Defendants' physical retail stores, Defendant AMAZON.COM, INC. once again represented itself to be the employer of Plaintiffs and Class Members through the offering of severance agreements to certain Plaintiffs and Class Members which would have released Defendant AMAZON.COM, INC. from all liability from claims of these plaintiffs and Class Members. This severance agreement was pre-signed by Beth Galetti, a senior Vice President for Human Resources for AMAZON.COM INC., reminded the Class Members of their duties under the Confidentiality Agreement mentioned previously, and labeled both Defendant AMAZON.COM, INC. and AMAZON RETAIL, LLC, as the "Employer." A copy of the severance agreement is found on the following page.

**CONFIDENTIAL SEVERANCE AGREEMENT**
**AND GENERAL RELEASE**

THIS CONFIDENTIAL SEVERANCE AGREEMENT AND GENERAL RELEASE (Agreement) is entered into by Amazon Retail LLC (Employer) and [redacted] (Employee).

**RECITALS**

1. Employee enters into this Agreement in connection with the termination of Employee's employment with Amazon.com, Inc. or its subsidiary or affiliate Amazon Retail LLC (depending on the circumstances, each an "Employer").

2. Employer and Employee wish to enter into an agreement to resolve any disputes that may exist between them arising out of or concerning their employment relationship and its termination, and they enter into this Agreement for that purpose.

3. Additionally, Employer and Employee previously entered into a Confidentiality and Invention Assignment Agreement, dated 11/11/2021 (Confidentiality Agreement). Employee may obtain a copy of the Confidentiality Agreement in the Employment Documents portal or by contacting the My HR Live Support at 1-888-892-7180. The parties also enter into this Agreement to reaffirm their existing rights and responsibilities under the Confidentiality Agreement.

**AGREEMENTS**

The parties agree as follows:

1. **EMPLOYMENT ENDING**
Employee understands and agrees that Employee's employment with Employer terminated effective 04/28/2026 ("Termination Date").

25. In addition, Defendants shared HR forms, handbook policies, and other documentation between them. Furthermore, executives of Defendant AMAZON.COM, INC. made business decisions for Defendant AMAZON RETAIL, LLC. Indeed, management for AMAZON.COM INC., including Beth Galetti, Senior Vice President of Human Resources for AMAZON.COM INC., ultimately made the decision to close all Amazon Fresh stores in California and layoff over 16,000 employees.

26. Defendants had the authority to hire and terminate Plaintiffs and the other Class Members, to set work rules and conditions governing Plaintiffs and the other Class Members' employment, and to supervise their daily employment activities.

27. Defendants exercised sufficient authority over the terms and conditions of Plaintiffs and the other Class Members' employment for them to be joint employers of Plaintiffs and the other Class Members.

28. Defendants directly hired and paid wages to Plaintiffs and the other Class Members.

29. At all relevant times, Defendants, and each of them, ratified each act or omission complained of herein. At all relevant times, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

30. Plaintiffs are informed and believe, and thereon allege, that each Defendant is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

## GENERAL ALLEGATIONS

31. From the first Amazon Fresh store openings in California in 2020 up until the closure of the entire Amazon Fresh chain of stores in March 2026, Amazon was engaged in a pattern and practice of misclassifying its Assistant Managers and Store Managers as salaried, exempt employees. In doing so, Amazon deprived Plaintiffs and the Class Members of all wages owed, as set forth below.

32. Starting in 2020, whenever a store opened in California, Amazon set the store's labor budget at what would be stores' highest level of staffing. From when the doors opened onwards, stores' staffing decreased and Amazon generally shrunk labor budgets over time, effectively cutting labor by attrition. Periodically, Amazon would conduct layoffs, including at least in 2023 and 2025, culminating in closure of all stores and the elimination of thousands of workers in 2026.

33. During the Class Period, both Assistant Managers and Store Managers bore the fundamental responsibility of keeping store operations afloat notwithstanding shrinking store associate labor.

34. Though Assistant Managers rotated department oversight at stores,

Assistant Managers were expected to help pick up the slack wherever it was needed. Given the severe labor imbalance inherent in freight, Assistant Managers assisted with managing freight regardless of which departments they were assigned. Store Managers, increasingly feeling the pinch of lacking store associate labor to handle freight, also assisted receiving, unwrapping, unpacking, and stocking product on shelves, as well as assisted in other departments performing non-exempt work. Compounding the problem was that Amazon only staffed a single dock associate per store who could operate electric pallet jacks and offload trucks. Beyond this dock associate, Amazon only trained and permitted managers to operate electric pallet jacks and offload deliveries, meaning that, after the dock associate's morning shift ended, managers handled all deliveries. As a result, managers handled almost all deliveries that arrived in the afternoon, evenings, overnights, and weekends. Further compounding this problem is that trucks making deliveries rarely arrived on schedule, meaning that dock associates went underutilized and managers most of the offloading and staging pallets from deliveries. Managers would have to prioritize the delivery over other tasks, which would generally eat up 30-45 minutes a delivery, with multiple deliveries arriving at stores every day.

35. Given that managers spent the vast majority of their day handling freight and other store associate-level tasks, the unmanageable freight problem trickled down into other areas. If managers did not devote enough time to managing freight, it would build up in stores' backrooms, creating narrow walkways, blocking docks, doors, and egress with oversized pallets sometimes wrapped seven to ten feet high. On several occasions at the North Hollywood and Woodland Hills stores, staff moved new shipments of pallets outside the store in the parking area—an uncovered lot in Woodland Hills and a shared parking garage in North Hollywood. Though the product moved outdoors was generally shelf-stable, putting it outdoors then subjected it to exposure to the elements, including on several instances, rain. When rain ruined much of the product, managers were chastised for not keeping the freight inside.

36. The problem of undermanaged freight had the unfortunate effect of compounding itself, if left unattended. If freight built up and was not unwrapped and stocked (if shelves had room for the product, which they often did not), it would get pushed to the walls of crowded backrooms or cold storage rooms, effectively buried. Products shipped but unprocessed would not find their ways to shelves, and the product would expire, needing to be trashed.

37. Another symptom of this vicious cycle of undermanaged freight demonstrated the disconnect between the real word and Amazon's inventory management systems. Amazon's inventory management systems would reflect delivered-but-unshelved product as available online, and customers shopping online for order pickup or delivery (called "outbound") would select unshelved products. When the store associate filling the order (the "picker") went through the store and could not find a selected product on shelves, they would mark it as "INF" (Item Not Found). With the desired product unfound and unsold, it would get marked as lost, and the automated inventory management system would order the product again on the next shipment. Given its inherent drag on customer satisfaction, high INF rates remained a significant focus for Amazon; all throughout the Class Period, managers were required to bring persistently high INF rates down, creating a separate pressure on managers to prioritize freight. In 2025, however, after persistent very high rates of INF, Amazon instituted a policy that only managers could mark products as INF. If pickers could not find products on shelves, they would call managers (and not associates), who would have to drop everything and field the request. Managers would spend up to ten or fifteen minutes searching the backroom's freestanding unprocessed pallets for the desired product. Determined managers would often have to climb onto pallets and dig through the stacks. Sometimes managers could find the product. Most often, they could not and would have to mark the product as INF. Even after this policy was implemented, INF rates remained at over 10% (versus Amazon's stated goal of 2%) through 2026.

38. Stores also received excessive fresh shipments as well. On at least one

occasion while managing the overnight shift at the North Hollywood store, assistant manager Mr. Allton found himself processing a fresh food shipment when the cold storage room filled up with no room for any additional product. In an effort to keep the product fresh until it could be distributed to in-store shelves, Mr. Allton placed pallets of fresh food in cold storage on timed intervals, rotating the pallets in and out of the cold storage area to keep the fresh foods cold long enough not to spoil.

39. Managers also had limited authority to get rid of excessive product and were held accountable by regional and district managers who would impose discipline for high levels of "shrink" (i.e. lost inventory not returning revenue). Given the sheer volume of freight, much of the excess product would go to the dumpsters once it passed the "sell by" or expiration date. Though managers could work with charities to donate unused product and often did, donated product remained "shrink" for which managers were accountable. Managers thus were incentivized held on to product as long as possible, shuffling it among available storage spaces until it was processed and put on shelves or shrunk.

40. In this way, Amazon maintained its realistic expectation that managers would keep a handle on the freight levels coming into stores by adequately processing it and getting it on shelves. By virtue of ever tightening labor budgets and limited store associate assistance, managers had no choice but to handle freight and other store associate-level tasks on their own.

41. The problem of excessive freight was endemic to all Amazon Fresh stores in California. When any given store's freight problem became especially undermanaged due to attrition or call outs, managers would reach out to other stores' management teams to ask for help stabilizing freight levels. Most managers would do stints at other stores (both regionally and nationally) helping manage freight.

42. The downstream effect of the unmanageable freight levels fell disproportionately on managers' time. Managers spent the vast majority of their time (and often entire days), generally **at least** 8 hours of a 10 hour workday, handling freight

or other store associate-level responsibilities with almost no time spent on management duties like administering breaks, writing schedules, and supervising associates. The excessive freight was so problematic, it created a zero-sum scenario where any time managers spent on actual management duties worsened the freight situation. If managers spent any time supervising, participating in management calls or conducting trainings, they had to make up the time they spent away from freight or other store associate tasks, the condition of which had likely worsened due to inattention.

43. The result of Amazon's broken inventory management system resulted in managers spending well over half their time performing non-managerial and non-exempt tasks every workweek in the Class Period.

44. Managers did not earn any additional pay at a straight time or overtime rate for any time spent working over 8 hours by virtue of their salary. Similarly, managers did not earn straight time or double time for any time spent working over 12 hours.

45. During the entirety of the Class Period, managers' demands were so pressing, managers could not take any meal or rest breaks without adverse consequences. On almost every single day during the Class Period, managers had no opportunity to take meal periods or rest periods in any compliant fashion.

46. Daily during the entirety of the Class Period, if a manager had the opportunity to take any meal period, it was generally well past the end of the fifth hour worked and it was very likely interrupted or cut short by store associates relaying customer or other needs.

47. During the entirety of the Class Period, Amazon did not maintain a policy authorizing or permitting managers to take uninterrupted 10-minute rest breaks, and Amazon's expectations of managers disincentivized them to take any rest breaks. As detailed above, if a manager took any break, the store's operations would falter from inattention. Problems, such as freight, would compound and worsen, ultimately cascading into managers incurring discipline.

48. Plaintiffs are informed and believe, and thereon allege, that Defendants

engaged in a pattern and practice of wage abuse against their hourly-paid and/or non-exempt employees as well as employees misclassified as salaried and/or exempt. As set forth in more detail below, this pattern and practice of wage abuse involved, *inter alia*, classifying certain employees as salaried and/or exempt even though the majority of their duties were the same as employees classified as hourly and/or non-exempt, requiring Plaintiffs and the other Class Members to work off-the-clock without compensation, failing to provide premium wages for non-compliant schedule changes, failing to properly compensate for “clopening” shifts, failing to properly pay wages for all hours worked, failing to provide all meal and rest breaks to which Plaintiffs and the other Class Members were entitled and failing to pay meal and rest break premiums when due, failing to timely pay wages during employment and upon termination of employment, failing to provide accurate wage statements, failing to reimburse necessary business-related expenses and failing to adhere to other related protections afforded by the California Labor Code and the applicable Industrial Welfare Commission Wage Order.

49. Defendants knew or should have known that they had a duty to compensate Plaintiffs and the other Class Members pursuant to California law. Defendants had the financial ability to pay such compensation, but willfully, knowingly, and intentionally failed to do so, to increase Defendants’ profits.

**<u>Plaintiffs Were Misclassified During the Entirety of the Class Period</u>**

50. In every workweek from their hire as an assistant manager, or store manager in the case of Mr. Rodriguez, Plaintiffs shared the experience of managers detailed above; for the vast majority of Plaintiffs’ working time (i.e. much more than 50%) in any given week, Plaintiffs performed non-managerial and non-exempt tasks.

51. In each workweek from his start as an Assistant Manager in 2022 to last day worked in August 2025, Mr. Sayeedul worked between 10 and 12 hours a day. For a three-month period when Mr. Sayeedul assisted launching the Encino, CA store between approximately May 2023 to August 2023, he worked 15 hours a day, five days

a week. Mr. Sayeedul did not receive additional pay at the straight time or overtime for any hours worked over 8 hours; similarly, he did not receive additional pay at the double time rate on each instance he worked over 12 hours. On no occasion did Mr. Sayeedul take a single uninterrupted thirty-minute meal period before the end of the fifth hour of work in the Class Period. Similarly, Mr. Sayeedul was not authorized or permitted to take any rest periods, as he shared the experience of managers detailed above.

52. In each workweek from his start as an Assistant Manager in September 2021 to last day worked in January 2024, Mr. Allton worked between 10 and 13 hours a day. Mr. Allton estimates he worked over 12 hours a day at least once a week in every workweek until the end of his employment. Mr. Allton did not receive additional pay at the straight time or overtime for any hours worked over 8 hours; similarly, he did not receive additional pay at the double time rate on each instance he worked over 12 hours. Mr. Allton did not take a single uninterrupted thirty-minute meal period before the end of the fifth hour of work in the Class Period. Mr. Allton was not authorized or permitted to take rest periods, as he shared the experience of managers detailed above.

53. In each workweek from his start as an Assistant Manager in May 2021 to last day worked in February 2025, Mr. Steely worked between 10 and 13 hours a day. Mr. Steely estimates he worked over 12 hours a day at least once in every workweek until the end of his employment. Mr. Steely did not receive additional pay at the straight time or overtime for any hours worked over 8 hours; similarly, he did not receive additional pay at the double time rate on each instance he worked over 12 hours. Mr. Steely did not take a single uninterrupted thirty-minute meal period before the end of the fifth hour of work in the Class Period. Similarly, Mr. Steely was not authorized or permitted to take rest periods, as he shared the experience of managers detailed above.

54. In each workweek from his start as an assistant manager in August 2020 to his last day worked in March 2026, Mr. Vasconcelos worked between 10 and 13 hours a day, with Mr. Vasconcelos working over 12 hours in a shift at least once a week during the Class Period. Mr. Vasconcelos did not receive additional pay at the straight

time or overtime for any hours worked over 8 hours; similarly, he did not receive additional pay at the double time rate on each instance he worked over 12 hours. Mr. Vasconcelos did not take a single uninterrupted thirty-minute meal period before the end of the fifth hour of work in the Class Period. Similarly, Mr. Vasconcelos was not authorized or permitted to take rest periods, as he shared the experience of managers detailed above.

55. In each workweek from her start as an assistant manager in November 2021 to her last day worked in March 2026, Ms. Ojeda worked between 10 and 13 hours a day. Ms. Ojeda worked up to 15 hours a day at least once a month. Ms. Ojeda did not receive additional pay at the straight time or overtime for any hours worked over 8 hours; similarly, she did not receive additional pay at the double time rate on each instance she worked over 12 hours. Ms. Ojeda did not take a single uninterrupted thirty-minute meal period before the end of the fifth hour of work in the Class Period. Similarly, Ms. Ojeda was not authorized or permitted to take rest periods, as she shared the experience of managers detailed above.

56. In each workweek from his start as a Store Manager in June 2023 to his last day worked in December 2024, Mr. Rodriguez worked approximately 15 to 16 hours a day. Mr. Rodriguez did not receive additional pay at the straight time or overtime for any hours worked over 8 hours; similarly, he did not receive additional pay at the double time rate on each instance he worked over 12 hours. Mr. Rodriguez did not take a single uninterrupted thirty-minute meal period before the end of the fifth hour of work in the Class Period. Similarly, Mr. Rodriguez was not authorized or permitted to take rest periods, as he shared the experience of managers detailed above.

**<u>City of Los Angeles Fair Work Week Violations</u>**

57. Through 2023, Amazon required Store Managers to prepare and disseminate schedules of the Assistant Managers for a given store. Amazon trained Store Managers to disseminate schedules in the week leading up to the next month. For example, schedules for February would be released the last week of January.

58. Amazon required Assistant Managers to rotate shifts multiple times a week. This had the unfortunate effect of requiring managers to work "clopening" shifts—managers would be scheduled to work until 11pm (a 10 hour shift), and then would be scheduled to report to work the next morning at 8am, less than 10 hours later.

59. From April 2023 until his last day worked in August 2025, at least once a week Mr. Sayeedul would work the closing shift, scheduling him until 11pm (and would very often work later), and then would be scheduled to work at 8am the next day.

60. Amazon frequently changed managers' schedules at the last-minute resulting in additional work time greater than 15 minutes, thus entitling Plaintiffs to a premium of an hour of pay at regular rate.

61. Furthermore, Amazon would require Plaintiffs and other class members to work additional hours if another manager called off sick, failing to provide the additional notice time necessary under the Los Angeles Municipal Code, and failing to provide such notice in writing.

62. On January 13, 2026, Plaintiff gave notice of Defendant's systemic violations of the Los Angeles Fair Work Week Ordinance to Defendants. Defendants did not cure the violations within 15 days. On September 3, 2026, sent a follow-up notice detailing the above-noted violations of the Los Angeles Fair Work Week Ordinance to Defendants, who did not cure the violations within 15 days.

## CLASS ACTION ALLEGATIONS

63. Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated, as members of a proposed class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

64. The proposed **Class** is defined as follows:

> **All current and former employees of Defendants who worked for Defendants as Assistant Managers or Managers, also known as L4, L5, or L6 employees, in the State of California at any**

**time during the period from four years prior to the date of the filing of this Complaint through final judgment.**

65. The proposed **Former Employee Sub-Class** is defined as follows:

**All current and former employees of Defendants who worked for Defendants as Assistant Managers or Managers, also known as L4, L5, or L6 employees, in the State of California at any time during the period from three years prior to the date of the filing of this Complaint through final judgment.**

66. The proposed **Assistant Manager** Sub-Class is defined as follows:

**All current and former employees of Defendants who worked for Defendants as Assistant Managers, also known as L4 or L5 employees, in the State of California at any time during the period from four years prior to the date of the filing of this Complaint through final judgment.**

67. The proposed **Manager** Sub-Class is defined as follows:

**All current and former employees of Defendants who worked for Defendants as Managers, also known as L6 employees, in the State of California at any time during the period from four years prior to the date of the filing of this Complaint through final judgment.**

68. Plaintiffs reserve the right to establish additional subclasses as appropriate.

69. There is a well-defined community of interest in this litigation and

the Class is easily ascertainable.

70. While the exact number and identities of Class Members are currently unknown to Plaintiffs, such information can be ascertained through appropriate discovery from records maintained by Defendants and their agents.

71. The Class is so numerous that the individual joinder of all its members is impracticable. This action has been brought and may properly be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure because there are common questions of law and fact as to the Class that predominate over questions affecting only individual members including, but not limited to:

i. Whether Defendants had a policy and practice of misclassifying Plaintiffs and the other Class Members as "non-exempt" employees;

ii. Whether Defendants had a policy and practice of failing to provide employees with a good faith estimate of work schedules;

iii. Whether Defendants had a policy and practice of failing to provide employees with at least 14 days' notice of work schedules;

iv. Whether Defendants had a policy and practice of failing to properly compensate employees for working "clopening" shifts;

v. Whether Defendants had a policy and practice of failing to provide written notice to employees of work schedule changes;

vi. Whether Defendants had a policy and practice of requiring employees to find their own coverage when missing work due to illness or another protected purpose;

vii. Whether Defendants had a policy and practice of failing to pay minimum wages to Plaintiffs and the other Class Members for all hours worked;

viii. Whether Defendants had a policy and practice of failing to pay overtime wages to Plaintiffs and the other Class Members for all overtime hours worked;

ix. Whether Defendants had a policy and practice of failing to provide meal

periods to Plaintiffs and the other Class Members;

x. Whether Defendants had a policy and practice of failing to provide rest periods to Plaintiffs and the other Class Members;

xi. Whether Defendants failed to pay their hourly-paid and/or non-exempt employees and misclassified employees in the State of California for all hours worked, and for all missed, short, late, and/or interrupted meal periods and rest breaks;

xii. Whether Defendants failed to timely pay all wages due to Plaintiffs and the other Class Members during their employment;

xiii. Whether Defendants' failure to pay wages, without abatement or reduction, in accordance with the California Labor Code, was willful;

xiv. Whether Defendants failed to pay all wages due to Plaintiffs and the other Class Members within the required time upon their discharge or resignation;

xv. Whether Defendants failed to comply with wage reporting as required by the California Labor Code, including, *inter alia*, section 226;

xvi. Whether Defendants failed to reimburse Plaintiffs and the other Class Members for necessary business-related expenses and costs;

xvii. Whether Defendants' conduct was willful or reckless;

xviii. Whether Defendants engaged in unfair business practices in violation of California Business & Professions Code section 17200, *et seq*.;

xix. The appropriate amount of damages, restitution, and/or monetary penalties resulting from Defendants' violation of California law; and

xx. Whether Plaintiffs and the other Class Members are entitled to compensatory damages pursuant to the California Labor Code.

33. Plaintiffs' claims are typical of the claims of the Class, and Plaintiffs' interests are coincident with and not antagonistic to those of the other Class Members Plaintiffs seek to represent. Plaintiffs will fairly and adequately protect the interests of

the members of the Class. Plaintiffs have retained attorneys experienced in the prosecution of class actions and Plaintiffs intend to prosecute this action vigorously.

34. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual litigation of the claims of all Class Members is impracticable. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome on the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, and/or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual and legal issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class Member.

35. Certification of this lawsuit as a class action will advance public policy objectives. Employers of this great state violate employment and labor laws every day. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. However, class actions provide the Class Members who are not named in the complaint anonymity that allows for the vindication of their rights.

## FIRST CAUSE OF ACTION

## VIOLATION OF LAMC CH. XVIII, ART. 5, § 185, *ET SEQ.*

## Fair Work Week Ordinance

## (Against All Defendants)

36. Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

37. In response to a UCLA study showing widespread unpredictability in work scheduling of retail workers, the Los Angeles City Council enacted LAMC Ch. XVIII, Art. 5, section 185, *et seq*, known as the Fair Work Week Ordinance (hereafter "FWWO" or "LAMC § 185").

38. The purpose of the FWWO is to promote the health, safety, and welfare of retail workers by providing them with a more predictable work schedule that ensures stability for themselves and their families. The FWWO went into effect on April 1, 2023, with full enforcement beginning on September 28, 2023.

39. The FWWO requires covered employers to, among other things: (1) provide employees a good faith estimate of their work schedules (LAMC § 185.02); (2) compensate employees at one and one-half times their regular rate of pay for working shifts beginning less than ten hours from the prior shift, aka "clopening" (LAMC § 185.08); (3) provide employees with at least 14 days' notice of their work schedules (LAMC § 185.04.A); (4) provide notice of all work schedule changes in writing (LAMC § 185.04.B); and (5) pay premium wages in the form of Predictability Pay when an employer makes certain non-compliant schedule changes.

40. The FWWO also prohibits employers from requiring employees to find their own coverage for scheduled hours when work is missed due to illness or some other protected purpose. (LAMC § 185.07).

41. A covered employer under the FWWO is a retail business with 300 or more employees globally, with certain exceptions not relevant here. At all relevant times, Defendants were covered employers under LAMC § 185.

42. A covered employee under the FWWO is any individual performing at least two hours of work within the geographic boundaries of the City of Los Angeles for a covered employer and who is entitled to earn the California minimum wage. At all relevant times, Plaintiffs who worked in Los Angeles city and certain Class Members were covered employees under LAMC § 185.

43. Plaintiffs and the Class Members were subject to unpredictable scheduling practices, last-minute schedule change requests, working back-to-back shifts less than ten hours apart, and other practices prohibited under the FWWO.

44. Defendants regularly scheduled Plaintiffs and the Class Members to work "clopening" shifts, but did not pay them at a rate time and one-half for these shifts

Instead, properly classified, non-exempt employees were paid at their regular rate, while misclassified employees were paid no additional wages beyond their salary, regardless of being required to work "clopening" shifts.

45. Defendants regularly subjected Plaintiffs and the Class Members to schedule changes that were not timely, not in writing, or both, yet Defendants never paid premium wages (sometimes referred to as "Predictability Pay") to Plaintiffs and Class Members when this occurred.

46. Accordingly, Defendants regularly violated the FWWO by, among other things, failing to adhere to predictable scheduling rules and by failing to provide premium wages to employees when this occurred.

47. Pursuant to LAMC section 188.05, Plaintiffs submitted an Amended PAGA notice that gave written notice of the systemic violations of the FWWO as to all Class Members employed in the City of Los Angeles on January 13, 2026. A true and correct copy of the correspondence dated January 13, 2026 is attached hereto as Exhibit A. Defendants did not respond or otherwise cure within 15 days. As a follow up, Plaintiffs gave written notice of claims described above as they related to the FWWO on September 3, 2026. Plaintiff did not hear back from Defendant regarding these claims within this time period. Moreover, Defendant stopped operating all Amazon Fresh retail stores in the state of California in March 2026 and thus could not have cured the violations alleged. A true and correct copy of the correspondence dated September 3, 2026, is attached hereto as Exhibit B.

48. Defendants' failure to adhere to the FWWO scheduling rules or pay the associated premium wages to Plaintiffs and Class Members as required violates LAMC § 185, *et seq*. Pursuant to LAMC §§ 185.06 and 188.07, Plaintiffs and the other Class Members are entitled to recover unpaid wages and/or premium pay, Predictability Pay, statutory damages, and reasonable attorneys' fees, expenses, and costs.

/ /

/ /

## SECOND CAUSE OF ACTION

## VIOLATION OF CAL. LABOR CODE §§ 1194, 1197, AND 1197.1

## Failure to Pay Minimum Wage

## (Against All Defendants)

48. Plaintiffs incorporate by reference the allegations in all preceding paragraphs. Plaintiffs and the other Class Members were not paid the appropriate minimum wage for all of the hours they worked. Plaintiffs and the other Class Members were not paid the minimum wage for work performed beyond their scheduled shifts, and the wages paid to them were not sufficient to compensate them for all hours they worked at a minimum wage rate on a cumulative basis.

49. California Labor Code sections 1194, 1197 and 1197.1 provide that the minimum wage for employees fixed by the Industrial Welfare Commission is the minimum wage to be paid to employees, and the payment of a wage less than the minimum so fixed is unlawful. Plaintiffs and Class Members' salaries compensated them for up to forty (40) hours of work per week. Any work performed in excess of forty (40) hours per week was therefore uncompensated. Plaintiffs and the other Class Members were frequently suffered or permitted to work "off-the-clock" prior to clocking in or after clocking out for their shifts, such that they were not paid minimum wage for all hours worked. Plaintiffs and Class Members routinely worked in excess of forty (40) hours per week but were never paid for working these additional hours.

50. Accordingly, Defendants regularly failed to pay at least minimum wages to Plaintiffs and the other Class Members for all hours they worked in violation of California Labor Code sections 1194, 1197, and 1197.1.

51. Defendants also failed to accurately record the actual time worked by Plaintiffs and the other Class Members. Defendants knew or should have known that Plaintiffs and the other Class Members were not receiving minimum wage for all hours worked because, among other things, Defendants did not encourage or require Plaintiffs and Class Members to record their hours worked and often required them to perform

work outside of their scheduled shifts.

52. Defendants' failure to pay Plaintiffs and the other Class Members the minimum wage as required violates California Labor Code sections 1194, 1197 and 1197.1. Pursuant to those sections, Plaintiffs and the other Class Members are entitled to recover the unpaid balance of their minimum wage compensation, as well as interest, costs, and attorney's fees.

53. Pursuant to California Labor Code section 1194.2, Plaintiffs and the other Class Members are entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

**THIRD CAUSE OF ACTION**

**VIOLATION OF CAL. LABOR CODE §§ 510 AND 1198**

**Unpaid Overtime**

**(Against All Defendants)**

54. Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

55. California Labor Code section 1198 and the applicable IWC Wage Order provide that it is unlawful to employ persons for extended periods of time without compensating them at a rate of pay either time-and-one-half or two-times that person's regular rate of pay, depending on the number of hours worked by the person on a daily and/or weekly basis.

56. Specifically, the applicable IWC Wage Order provides that Defendants were required to pay Plaintiffs and the other Class Members at the rate of time-and-one-half for all hours worked in excess of eight (8) hours in a day, in excess of forty (40) hours in a week, and/or the first eight (8) hours worked on the seventh consecutive day in a work week.

57. The applicable IWC Wage Order further provides that Defendants were required to pay Plaintiffs and the other Class Members overtime compensation at a rate of two (2) times their regular rate of pay for all hours worked in excess of twelve (12)

hours in a day and/or for all hours worked in excess of eight (8) hours on the seventh consecutive day in a work week.

58. California Labor Code section 510 codifies the right to overtime compensation at one-and-one half times the regular hourly rate for hours worked in excess of eight (8) hours in a day, in excess of forty (40) hours in a week, and/or the first eight (8) hours worked on the seventh consecutive day in a work week, and to overtime compensation at twice the regular hourly rate for hours worked in excess of twelve (12) hours in a day or in excess of eight (8) hours in a day on the seventh consecutive day of work.

59. Plaintiffs and the other Class Members regularly worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, in excess of forty (40) hours in a week, and/or in excess of seven (7) consecutive days in a work week. However, Defendants did not accurately record Plaintiffs and the other Class Members' actual hours worked and intentionally and willfully failed to pay all overtime wages owed to Plaintiffs and the other Class Members. Defendants' failure to pay correct overtime wages included, *inter alia*: (a) when the combined total of the off-the-clock work discussed *supra* and the on-the-clock work exceed the number of hours that trigger the payment of overtime wages under California Labor Code sections 510 and 1198 and/or the applicable IWC Wage Order; (b) when Defendants intentionally, willfully, and/or negligently mischaracterized overtime as straight time; and/or (c) when Defendants assigned more work than could reasonably be completed in a workday or work week to Plaintiffs and Class Members, but refused to authorize the overtime necessary for them to complete the assigned work. This is particularly the case for Plaintiffs and the other Class Members who were improperly misclassified and paid as salaried employees, and were never paid overtime.

60. Defendants' failure to pay Plaintiffs and the other Class Members as outlined above violates California Labor Code sections 510 and 1198 and the applicable IWC Wage Order and is therefore unlawful.

61. Pursuant to California Labor Code section 1194, Plaintiffs and the other Class Members are entitled to recover their unpaid overtime compensation, plus interest, costs, and attorneys' fees.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF CAL. LABOR CODE §§ 226.7 AND 512(a)**

**Meal Break Violations**

**(Against All Defendants)**

62. Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

63. California Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order govern Plaintiffs and the other Class Members' employment by Defendants.

64. California Labor Code section 226.7 provides that no employer shall require an employee to work during any meal period mandated by an applicable IWC Order.

65. The applicable IWC Wage Order and California Labor Code section 512(a) provide that an employer may not require, cause, or permit an employee to work for a period of more than five (5) hours per day without providing the employee with an uninterrupted meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee.

66. The applicable IWC Wage Order and California Labor Code section 512(a) further provide that an employer may not require, cause, or permit an employee to work a work period of more than ten (10) hours per day without providing the employee with a second uninterrupted meal period of not less than thirty (30) minutes, except if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

67. Plaintiffs and the other Class Members who were scheduled to work for shifts no longer than six (6) hours, and who did not waive their legally mandated meal periods by mutual consent, were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes.

68. Plaintiffs and the other Class Members who were scheduled to work for shifts in excess of ten (10) hours but no longer than twelve (12) hours, and who did not waive their legally-mandated meal periods by mutual consent, were required to work for periods longer than ten (10) hours without a second uninterrupted meal period of not less than thirty (30) minutes.

69. Defendants intentionally and willfully required Plaintiffs and the other Class Members to work during meal periods and failed to compensate Plaintiffs and the other Class Members for work performed during meal periods. This includes, among other things, requiring Plaintiffs and Class Members to work through their lunch breaks, permitting and/or requiring Plaintiffs and Class Members to take late lunch breaks, permitting and/or requiring Plaintiffs and Class Members to take short lunch breaks, interrupting and/or allowing others to interrupt Plaintiffs and Class Members during their lunch breaks, failing to relieve Plaintiffs and Class Members of all duties during their lunch breaks, and/or restricting Plaintiffs and Class Members from leaving the premises during their lunch breaks.

70. During the relevant time period, Defendants failed to pay Plaintiffs and the other Class Members all meal period premiums due pursuant to California Labor Code section 226.7 and 512 and the applicable IWC Wage Order. Defendants failed to include all required wages and renumeration, including non-discretionary commissions, non-discretionary bonuses, and non-discretionary performance pay, when calculating regular rates of pay for meal period premiums and/or merely using straight time pay to calculate regular rates of pay for meal period premiums.

71. Defendants’ conduct therefore violates the applicable IWC Wage Order, and California Labor Code sections 226.7 and 512(a).

72. Pursuant to the applicable IWC Wage Order and California Labor Code section 226.7(b), Plaintiffs and the other Class Members are entitled to recover from Defendants one additional hour of pay at their regular rate of compensation for each workday that a compliant meal period was not provided as well as interest thereon.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF CAL. LABOR CODE § 226.7**

**Rest Break Violations**

**(Against All Defendants)**

73. Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

74. California Labor Code section 226.7 and the applicable IWC Wage Order govern Plaintiffs and the other Class Members' employment by Defendants.

75. California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC.

76. The applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3½) hours."

77. Defendants routinely required Plaintiffs and the other Class Members to work three and one-half (3 ½) or more hours without authorizing or permitting a compliant ten (10) minute rest period per each four (4) hour period, or major fraction thereof, worked.

78. Moreover, Defendants willfully required, suffered and permitted Plaintiffs and the other Class Members to work during what should have been their rest periods.

Defendants also failed to relieve Plaintiffs and the other Class Members of all duties for ten (10) minutes as required for compliant rest breaks.

79. As a result, Plaintiffs and the other Class Members worked through rest periods, took late rest periods, took interrupted rest periods, and/or took short rest periods, if at all.

80. Pursuant to the applicable IWC Wage Order and California Labor Code section 226.7(b), Plaintiffs and the other Class Members were entitled to recover from Defendants one (1) additional hour of pay at their regular hourly rate of compensation for each workday that compliant rest period(s) were not provided.

81. Defendants had no policy or practice to pay a premium when rest periods were missed, short, late, and/or interrupted, or otherwise failed to comply with California law, and thus Defendants failed to pay Plaintiffs and the other Class Members the full rest period premiums due to them, in violation of California Labor Code section 226.7 and the applicable IWC Wage Order.

82. Pursuant to the applicable IWC Wage Order and California Labor Code section 226.7(c), Plaintiffs and the other Class Members are entitled to recover from Defendants one additional hour of pay at their regular rate of compensation for each workday that compliant rest period(s) were not provided, as well as interest thereon.

## SIXTH CAUSE OF ACTION

## VIOLATION OF CAL. LABOR CODE § 226(a)

## Wage Statement Violations

## (Against All Defendants)

83. Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

84. At all material times set forth herein, California Labor Code section 226(a) provides that every employer shall furnish each of its employees an accurate itemized wage statement in writing, including, but not limited to, the name and address of the

legal entity that is the employer, total hours worked, and all applicable hourly rates.

85. As a result of the violations set forth in detail above (failure to pay overtime, failure to pay minimum wages, failure to pay meal and rest break violations, and failure to pay all wages, premium pay and/or penalties due under the FWWO), Defendants intentionally and willfully failed to provide Plaintiffs and the other Class Members with complete and accurate wage statements. The deficiencies include, among other things, the failure to state all hours worked, the failure to state the actual gross wages earned, the failure to include meal and rest break premiums, and the failure to include correct rates of pay. Accordingly, Defendants violated California Labor Code 226(a).

86. As a result of Defendants' violation of California Labor Code section 226(a), Plaintiffs and the other Class Members have suffered injury and damage to their statutorily protected rights.

87. Specifically, Plaintiffs and the other Class Members have been injured by Defendants' intentional violation of California Labor Code section 226(a) because they were denied both their legal right to receive, and their protected interest in receiving, accurate, itemized wage statements under California Labor Code section 226(a). In addition, because Defendants failed to provide the accurate number of total hours worked on wage statements, Plaintiffs and the other Class Members have been prevented by Defendants from determining if all hours worked were paid and the extent of the underpayment. Plaintiffs had to file this lawsuit, and will further have to conduct discovery, reconstruct time records, and perform computations in order to analyze whether in fact Plaintiffs and the other Class Members were paid correctly and the extent of the underpayment, thereby causing Plaintiffs to incur expenses and lost time. Plaintiffs would not have had to engage in these efforts and incur these costs had Defendants provided the accurate number of total hours worked. This has also delayed Plaintiffs' ability to demand and recover the underpayment of wages from Defendants.

88. Plaintiffs and the other Class Members are entitled to recover from

Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code section 226(a), or an aggregate penalty not exceeding four thousand dollars ($4,000).

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF CAL. LABOR CODE §§ 201, 202, AND 203**

**Untimely Final Wages**

**(Against All Defendants)**

89. Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

90. Pursuant to California Labor Code sections 201, 202, and 203, Defendants are required to timely pay all earned and unpaid wages to an employee who is discharged. California Labor Code section 201 mandates that if an employer discharges an employee, the employee's wages accrued and unpaid at the time of discharge are due and payable immediately. California Labor Code section 202 mandates that if an employee quits, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours' notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

91. California Labor Code section 203 provides that if an employer willfully fails to pay, in accordance with California Labor Code sections 201 and 202, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than thirty (30) days.

92. As a result of the violations set forth in detail above (failure to pay overtime, failure to pay minimum wages, failure to pay meal and rest break violations, and failure to pay all wages, premium pay and/or penalties due under the FWWO), at the time that Plaintiffs and the other Class Members' employment with Defendants

ended, Defendants knowingly and willfully failed to pay them all wages owed to them pursuant to California Labor Code sections 201 and 202, including, without limitation, overtime wages, minimum wages, meal period premium wages, rest period premium wages, and all wages due to Plaintiffs and Class Members as they became due, as required per California Labor Code sections 204.

93. As a result, Plaintiffs and the other Class Members are entitled to all available statutory penalties, including the waiting time penalties provided in California Labor Code section 203, together with interest thereon, as well as other available remedies.

## <u>EIGHTH CAUSE OF ACTION</u>

## VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 *ET. SEQ.*

### Unfair and Unlawful Business Practices

### (Against All Defendants)

94. Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

95. Each and every one of Defendants' acts and omissions in violation of the California Labor Code and/or the applicable IWC Wage Order as alleged herein, including but not limited to Defendant's failure and refusal to adhere to the provisions of the FWWO, failure and refusal to pay overtime compensation, Defendant's failure and refusal to pay minimum wages, Defendants' failure and refusal to provide required meal periods, Defendants' failure and refusal to provide required rest periods, Defendants' failure and refusal to furnish accurate itemized wage statements, Defendants' refusal to, Defendants' failure to timely pay wages upon termination, Defendant's failure to comply with the Los Angeles Living Wage Ordinance, and Defendants' entering into, implementation of, and enforcement of unlawful non-compete/non-solicitation agreements or provisions constitutes an unfair and unlawful business practice under California Business and Professions Code § 17200 *et seq*.

96. Defendants' violations of California wage and hour laws constitute unfair

and unlawful business practices because, among other things, they were done repeatedly over a significant period of time, and in a systematic manner, to the detriment of Plaintiffs and the other Class Members.

97. Defendants have avoided payment of overtime wages minimum wages, meal period premiums, rest period premiums, timely wages at the correct rate of pay, and other benefits as required by the California Labor Code, the California Code of Regulations, and the applicable IWC Wage Order. In addition, Defendants have avoided payment of wages, premium pay and/or penalties due under the FWWO.

98. Further, Defendants have failed to record, report, and pay the correct sums of assessment to the state authorities under the California Labor Code and other applicable regulations.

99. As a result of Defendants' unfair and unlawful business practices, Defendants have reaped unfair and illegal profits during Plaintiffs and the other Class Members' tenure at the expense of Plaintiffs, the other Class Members, and members of the public. Defendants should be made to disgorge their ill-gotten gains and to restore them to Plaintiffs and the other Class Members.

100. As a result of Defendants' unfair and unlawful business practices, Plaintiffs and the other Class Members are entitled to restitution of all monies to be disgorged from Defendants in an amount according to proof at the time of trial.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, prays for relief and judgment against Defendants, jointly and severally, as follows:

### Class Certification

1. That this action be certified as a class action;

2. That Plaintiffs be appointed as the representatives of the Class;

3. That counsel for Plaintiffs be appointed as Class Counsel; and

4. That Defendants provide to Class Counsel the names and most current/last known contact information (addresses, e-mails, and telephone numbers) of all Class

Members.

**<u>As to the First Cause of Action</u>**

5. That the Court declare, adjudge and decree that Defendants violated LAMC Ch. XVIII, Art. 5, § 185 *et seq*. by failing to provide a good faith estimate of work schedules, failing to properly compensate for "clopening" shifts, failing to provide at least 14 days' notice of work schedules, failing, failing to provide written notice of work schedule changes, failing to provide premium wages for non-compliant schedule changes, and/or requiring employees to find their own coverage when missing work for a protected purpose;

6. For general unpaid wages and/or premium pay and special damages as may be appropriate, including Predictability Pay pursuant to LAMC § 185.06;

7. For statutory damages and/or penalties pursuant to LAMC § 188.07;

8. For reasonable attorneys' fees, expenses, and costs pursuant to LAMC § 188.07; and

9. For such other and further legal or equitable relief as the Court may deem just and proper.

**<u>As to the Second Cause of Action</u>**

10. That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 1194, 1197, and 1197.1 by willfully failing to pay minimum wages to Plaintiffs and the other Class Members;

11. For general unpaid wages and such general and special damages as may be appropriate;

12. For statutory wage penalties pursuant to California Labor Code section 1197.1 for Plaintiffs and the other Class Members in the amount as may be established according to proof at trial;

13. For pre-judgment interest on any unpaid compensation from the date such amounts were due;

14. For reasonable attorneys' fees and costs of suit incurred herein pursuant to

California Labor Code section 1194(a);

15. For liquidated damages pursuant to California Labor Code section 1194.2; and

16. For such other and further relief as the Court may deem just and proper.

**As to the Third Cause of Action**

17. That the Court declare, adjudge, and decree that Defendants violated California Labor Code sections 510 and 1198 and applicable IWC Wage Orders by willfully failing to pay all overtime wages due to Plaintiffs and the other Class Members;

18. For general unpaid wages at overtime wage rates and such general and special damages as may be appropriate;

19. For pre-judgment interest on any unpaid overtime compensation commencing from the date such amounts were due;

20. For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Labor Code section 1194(a); and

21. For such other and further relief as the Court may deem just and proper.

**As to the Fourth Cause of Action**

22. That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 226.7 and 512 and the applicable IWC Wage Order by willfully failing to provide all meal periods, (including second meal periods) to Plaintiffs and the other Class Members;

23. For premium wages pursuant to California Labor Code section 226.7(c);

24. For all actual, consequential, and incidental losses and damages, according to proof;

25. For pre-judgment interest on any unpaid wages from the date such amounts were due;

26. For reasonable attorneys' fees and costs of suit incurred herein; and

27. For such other and further relief as the Court may deem just and proper.

**As to the Fifth Cause Action**

28. That the Court declare, adjudge and decree that Defendants violated California Labor Code section 226.7 and the applicable IWC Wage Order by willfully failing to provide all rest periods to Plaintiffs and the other Class Members;

29. For premium wages pursuant to California Labor Code section 226.7(c);

30. For all actual, consequential, and incidental losses and damages, according to proof;

31. For pre-judgment interest on any unpaid wages from the date such amounts were due; and

32. For such other and further relief as the Court may deem just and proper.

**As to the Sixth Cause of Action**

33. That the Court declare, adjudge, and decree that Defendants violated the provisions of California Labor Code section 226(a) as to Plaintiffs and the other Class Members, and willfully failed to provide accurate itemized wage statements to them;

34. For actual, consequential, and incidental losses and damages, according to proof;

35. For statutory penalties pursuant to California Labor Code section 226(e); and

36. For such other and further relief as the Court may deem just and proper.

**As to the Seventh Cause of Action**

37. That the Court declare, adjudge, and decree that Defendants violated California Labor Code sections 201, 202, and 203 by willfully failing to pay all compensation owed at the time of termination of the employment of Plaintiffs and the other Class Members no longer employed by Defendants;

38. For all actual, consequential, and incidental losses and damages,

according to proof;

39. For statutory wage penalties pursuant to California Labor Code section 203 for Plaintiffs and the other Class Members who have left Defendants' employ;

40. For pre-judgment interest on any unpaid compensation from the date due; and

41. For such other and further relief as the Court may deem just and proper.

**As to the Eighth Cause of Action**

42. That the Court declare, adjudge and decree that Defendants violated the following California Labor Code sections as to Plaintiffs and the other Class Members: 510 and 1198 (by failing to pay overtime wages); 1194, 1197, and 1197.1 (by failing to pay minimum wages); 226.7 and 512(a) (by failing to provide meal and rest periods or compensation in lieu thereof); 551, 552, and 852 (by failing to provide one day's rest in seven); 226(a) (by failing to provide accurate wage statements); and 201, 202, and 203 (by failing to pay all wages owed upon termination); and California Business and Professions Code section 16600 (by imposing unlawful non-solicitation/non-compete agreements);

43. That the Court declare, adjudge and decree that Defendants violated LAMC Ch. XVIII, Art. 5, § 185 *et seq*. by failing to provide a good faith estimate of work schedules, failing to properly compensate for "clopening" shifts, failing to provide at least 14 days' notice of work schedules, failing to provide written notice of work schedule changes, failing to provide premium wages for non-compliant schedule changes, and/or requiring employees to find their own coverage when missing work for a protected purpose;

44. For restitution of unpaid wages to Plaintiffs and all the other Class Members and all pre-judgment interest from the day such amounts were due and payable;

45. For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violation of California Business and Professions Code sections 17200, *et seq*.;

46. For reasonable attorneys' fees and costs of suit incurred herein.

Dated: October 2, 2026 **BLACKSTONE LAW, APC**

By: *Zachary T. Gershman*
Sage S. Stone, Esq.
Zachary T. Gershman, Esq.
Matthew R. Soto, Esq.

*Attorneys for* Plaintiffs JACOB SAYEEDUL, JEFFREY ALLTON, ASHLEY BLAIR STEELY, JOSEPH VASCONCELOS, TEENA MARIE OJEDA, and AGUSTIN RODRIGUEZ, individually, and on behalf of other similarly situated employees

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial with respect to all issues triable of right by jury.

Dated: October 2, 2026

**BLACKSTONE LAW, APC**

By: *Zachary T. Gershman*

Sage S. Stone, Esq.
Zachary T. Gershman, Esq.
Matthew R. Soto, Esq.

*Attorneys for* Plaintiffs JACOB SAYEEDUL, JEFFREY ALLTON, ASHLEY BLAIR STEELY, JOSEPH VASCONCELOS, TEENA MARIE OJEDA, and AGUSTIN RODRIGUEZ, individually, and on behalf of other similarly situated employees

# EXHIBIT A

BLACKSTONE LAW

8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

Sage S. Stone, Esq.
sstone@blackstonepc.com

December 2, 2025

**PAGA Claim Notice Via Online Electronic Submission**
California Labor & Workforce Development Agency
800 Capitol Mall, Suite 5000 (MIC-55)
Sacramento, CA 95814
https://dir.govfa.net/411

**RE: *Jacob Sayeedul v. Amazon Retail LLC***

To Whom It May Concern:

This office represents Jacob Sayeedul ("Claimant") with respect to their claims under the California Labor Code against Amazon Retail LLC (including all affiliates, subsidiaries, parents, directors, and officers) (collectively referred to herein as "Employers"). This letter is being sent simultaneously to Employers by certified mail.

Employers employed Claimant from approximately December 2020 to July 2025 as a non-exempt, hourly employee, and from July 2025 to September 2025 as an exempt, salaried Assistant Manager, at the Amazon Fresh store located at 5101 Lankershim Blvd North Hollywood, CA 91601. Employers gave Claimant and similarly aggrieved individuals titles such as "Assistant Manager" or the equivalent and classified them as exempt/salaried employees, while having them continue to perform many of the same tasks as Employers' non-exempt/hourly employees, including: customer service, working the cash register, stocking the shelves, opening and closing the store, receiving deliveries, etc. Because Claimant and Aggrieved Employees' day-to-day duties were less than 50% managerial in nature they should have been classified as non-exempt employees. Instead, Employers misclassified Claimant and Aggrieved Employees as exempt from certain provisions of the California Labor Code, and the orders and standards promulgated by the California Department of Industrial Relations, Industrial Welfare Commission, and Division of Labor Standards, which has resulted in the failure of Employers to pay Claimant and Aggrieved Employees all wages due to them.

Claimant intends to bring a representative action seeking penalties for violations of the California Labor Code which are recoverable under the Labor Code Private Attorneys General Act of 2004, California Labor Code sections 2698, *et seq*. ("PAGA"). Claimant is seeking penalties on behalf of themself and in a representative capacity on behalf of the State of California and all current and former hourly-paid and/or non-exempt employees and/or exempt but misclassified

BLACKSTONE LAW

8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

who worked for Employers in the State of California during the relevant statutory period ("Aggrieved Employees"). This letter is being sent in compliance with California Labor Code section 2699.3 and shall serve as Claimant's notice of the provisions of the California Labor Code alleged to have been violated, including the facts and theories in support thereof.

As detailed below, Employers violated several of California's wage and hour laws during Claimant's employment, including but not limited to California Labor Code sections 201, 202, 203, 204, 226(a), 226.7, 227.3, 510, 512(a), 551, 552, 1174(d), 1194, 1197, 1197.1, 1198, 2800, 2802*,* and the applicable Industrial Welfare Commission Wage Order ("IWC Wage Order").

The claims made on behalf of Claimant and Aggrieved Employees are based upon the following facts and theories:

## 1. FAILURE TO PAY FOR ALL TIME WORKED AT CORRECT RATES OF PAY, INCLUDING MINIMUM WAGES, STRAIGHT TIME WAGES, AND OVERTIME COMPENSATION

Employers engaged in numerous unlawful practices which resulted in the failure to pay Claimant and other Aggrieved Employees for all time worked at the correct rates of pay, including minimum wages, straight time wages, and overtime compensation.

California Labor Code sections 1194, 1197, and 1197.1 and IWC Wage Orders require employers to pay at least the legal minimum wage to their employees. California Labor Code sections 510 and 1198 and IWC Wage Orders further require employers to pay no less than one and one-half times the regular rate of pay of the employee for hours worked in excess of eight (8) hours in one workday, for hours worked in excess of forty (40) hours in one workweek, and for the first eight (8) hours worked on the seventh day of work in any one workweek, and to pay no less than twice the regular rate of pay of the employee for hours worked in excess of twelve (12) hours in one workday and for any work in excess of eight (8) hours on any seventh day of a workweek.

Employers failed to accurately record the actual time worked by Claimant and Aggrieved Employees, but Claimant and Aggrieved Employees routinely worked in excess of 40 hours per week and in excess of eight hours per day and were not compensated for any hours worked in excess of those amounts at either minimum wage, their regular hour rate or at the proper overtime rate, as applicable.

As a result of the foregoing practices, Employers have failed to pay Claimant and other Aggrieved Employees for all wages earned at the correct rates of pay, including minimum wages, straight time wages, and overtime compensation. Accordingly, Employers violated IWC Wage Orders and California Labor Code sections 204, 510, 1194, 1197, 1197.1 and 1198.

BLACKSTONE LAW

8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

Claimant and Aggrieved Employees will therefore seek PAGA default penalties pursuant to California Labor Code section 2699; penalties pursuant to penalties paragraph of the applicable IWC Wage Orders; penalties pursuant to California Labor Code sections 558, 1197.1, and 1199; and attorneys' fees and costs.

**2. FAILURE TO PROVIDE MEAL PERIODS AND PAY MEAL PERIOD PREMIUMS**

California law requires employers to provide employees with an opportunity to take an uninterrupted meal period of no less than thirty (30) minutes before the end of the fifth hour of work when an employee works more than five (5) hours in a day. Cal. Lab. Code §§ 226.7, 512(a). A second meal period of no less than thirty (30) minutes must be provided before the end of the tenth hour of work when an employee works more than ten (10) hours in a day. Cal. Lab. Code §§ 226.7, 512(a). When an employer fails to provide a meal or rest period, an hour of pay at the employee's regular rate of compensation is owed to the employee. Cal. Lab. Code § 226.7(c).

During the relevant time period, Employers failed to provide Claimant and other Aggrieved Employees with legally-compliant 30-minute meal periods. Claimant and other Aggrieved Employees were required by Employers to work more than five (5) hours per day, but were not provided with uninterrupted 30-minute meal periods. Further, Claimant and other Aggrieved Employees were not provided with a second uninterrupted 30-minute meal period when they worked over ten (10) hours per day. Employers regularly required Claimant and other Aggrieved Employees to work through their first and second meal periods, to take their first meal period after their fifth (5th) hour of work, and/or to take their second meal periods after their tenth (10th) hour of work. Meal periods, when provided, were oftentimes interrupted or cut short.

Employers' policies, practices, and procedures were responsible for the violations alleged above and prevented Claimant and other Aggrieved Employees from taking timely, complete and duty-free meal periods because, amongst other reasons: (1) Employers did not have legally-compliant policies regarding the provision and timing of meal periods or systematically disregarded its own purported meal period policies; (2) Employers' management at various levels failed and refused to implement and enforce legally compliant meal period policies and practices; (3) Employers failed to adequately inform and train Claimant and other Aggrieved Employees regarding their right to take timely, uninterrupted, and duty-free meal periods; (4) Employers failed to adequately inform and train Claimant and other Aggrieved Employees about their right to premium wages for non-compliant meal periods; (5) Employers failed to ensure that there was adequate staffing to allow Claimant and other Aggrieved Employees to take timely, uninterrupted, and duty-free meal periods; (6) Employers required Claimant and other Aggrieved Employees to respond to work-related requests at all times, including during meal periods; and (7) Employers' policy and culture prevented Claimant and other Aggrieved Employees from taking timely,

BLACKSTONE LAW

8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

uninterrupted, and duty-free meal periods because of the priority placed on maximizing profits over employees' right to receive timely, uninterrupted, and duty-free meal periods.

Claimant and other Aggrieved Employees did not receive an extra hour of wages at their regular rate of pay for the meal periods which were not provided to them in compliance with California law. Accordingly, Employers violated the applicable IWC Wage Orders and California Labor Code sections 226.7, 512(a) and 1198.

Claimant and Aggrieved Employees will therefore seek PAGA default penalties pursuant to California Labor Code section 2699; penalties pursuant to penalties paragraph of the applicable IWC Wage Orders; penalties pursuant to California Labor Code sections 558 and 1199; and attorneys' fees and costs.

**3. FAILURE TO AUTHORIZE AND PERMIT REST PERIODS AND PAY REST PERIOD PREMIUMS**

California law requires employers to authorize and permit employees to take an uninterrupted rest period of no less than ten (10) minutes rest for every four (4) hours, or major fraction thereof, worked. Cal. Lab. Code § 226.7. When an employer fails to authorize and permit a rest period, an hour of pay at the employee's regular rate of compensation is owed to the employee. Cal. Lab. Code § 226.7(c).

Employers failed to authorize and permit Claimant and other Aggrieved Employees to take legally-compliant 10-minute rest periods. Employers required Claimant and other Aggrieved Employees to work through rest periods. Claimant and Aggrieved Employees were not provided with uninterrupted, duty-free rest periods when they worked more than four (4) hours or a major fraction thereof. Further, Claimant and other Aggrieved Employees were not provided with a second uninterrupted, duty-free rest period when they worked more than six (6) hours in a day, or a third uninterrupted, duty-free rest period after working more than ten (10) hours in day. In the rare event that a rest period was taken, it was frequently interrupted or cut short. Moreover, Claimant and other Aggrieved Employees were not completely relieved of duty as required by *Augustus v. ABM Security Services, Inc.,* 2 Cal.5th 257 (2016).

Employers' policies, practices, and procedures were responsible for the violations alleged above and prevented Claimant and other Aggrieved Employees from taking timely and complete rest periods because, amongst other reasons: (1) Employers did not have legally-compliant policies regarding the provision and timing of rest periods or systematically disregarded its own purported rest period policies; (2) Employers' management at various levels failed and refused to implement and enforce legally compliant rest period policies and practices; (3) Employers failed to adequately

8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

inform and train Claimant and other Aggrieved Employees regarding their right to take timely, uninterrupted, and duty-free rest periods; (4) Employers failed to adequately inform and train Claimant and other Aggrieved Employees about their right to premium wages for non-compliant rest periods; (5) Employers failed to ensure that there was adequate staffing to allow Claimant and other Aggrieved Employees to take timely, uninterrupted, and duty-free rest periods; (6) Employers required Claimant and other Aggrieved Employees to respond to work-related requests at all times, including during rest periods; and (7) Employers' policy and culture prevented Claimant and other Aggrieved Employees from taking timely, uninterrupted, and duty-free rest periods because of the priority placed on completing job requirements over employees' right to receive rest periods.

Claimant and other Aggrieved Employees did not receive an extra hour of wages at their regular rate of pay for the rest periods which were not provided to them in compliance with California law. Accordingly, Employers violated the applicable IWC Wage Orders and California Labor Code sections 226.7, and 1198.

Claimant and Aggrieved Employees will therefore seek PAGA default penalties pursuant to California Labor Code section 2699; penalties pursuant to penalties paragraph of the applicable IWC Wage Orders; Labor Code sections 558 and 1199 penalties; and attorneys' fees and costs.

**4. FAILURE TO TIMELY PAY WAGES DURING EMPLOYMENT**

California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month. California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. During the relevant time period, Employers have failed to timely pay all wages earned because Claimant and other Aggrieved Employees were not paid all the wages they were owed including, *inter alia,* overtime compensation, straight time wages, minimum wages, and meal and rest period premiums. Accordingly, Employers violated California Labor Code section 204(a).

Claimant and Aggrieved Employees will therefore seek PAGA default penalties pursuant to Labor Code section 2699; penalties pursuant to California Labor Code sections 210 and 1199; and attorneys' fees and costs.

BLACKSTONE LAW

8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

## 5. FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS

California Labor Code section 226(a) requires an employer semimonthly or at the time of each payment of wages to furnish wage statements to its employees setting forth, *inter alia*, (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, and (8) the name and address of the legal entity that is the employer.

As a result of the practices described herein, the wage statements provided to Claimant and other Aggrieved Employees failed to include the actual hours worked (including time spent working off-the-clock), the actual gross wages earned (including wages owed for time spent working off the clock and meal and rest period premiums), and the correct rates of pay. The wage statements provided to Claimant and other Aggrieved Employees also failed to include the name of the legal entity that employed Claimant and the Aggrieved Employees. Accordingly, Employers violated California Labor Code section 226(a).

Claimant and Aggrieved Employees will therefore seek PAGA default penalties; penalties pursuant to California Labor Code section 226.3; and attorneys' fees and costs.

## 6. FAILURE TO MAINTAIN ACCURATE RECORDS

California Labor Code section 1174(d) requires an employer to keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept with rules established for this purpose by the commission, but in any case, shall be kept on file for not less than two years. During the relevant time period, Employers have failed to maintain accurate records relating to Claimant and other Aggrieved Employees' work periods, meal periods, total daily hours worked, and total hours worked per payroll period. Accordingly, Employers violated the applicable IWC Wage Orders and California Labor Code sections 1198.5 and 1174(d).

Claimant and Aggrieved Employees will therefore seek PAGA default penalties pursuant to California Labor Code section 2699; penalties pursuant to penalties paragraph of the applicable IWC Wage Orders; California Labor Code section 1174.5 penalties; and attorneys' fees and costs.

BLACKSTONE LAW

8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

## 7. FAILURE TO REIMBURSE NECESSARY EXPENDITURES

California Labor Code sections 2800 and 2802 require an employer to reimburse its employees for all necessary expenditures incurred by the employee in direct consequence of the discharge of his or her job duties or in direct consequence of his or her obedience to the directions of the employer. The IWC Wage Orders require employers to provide employees with the tools or equipment necessary for the performance of their job. During the relevant time period, Claimant and Aggrieved Employees incurred necessary business-related expenses and costs that were not fully reimbursed by Employers. These costs include but are not limited to the purchase of shirts and pants for work uniform and the usage of personal cell phones for work-related purposes.

Accordingly, Employers violated the IWC Orders and California Labor Code sections 2800 and 2802. Claimant and Aggrieved Employees will therefore seek PAGA default penalties pursuant to California Labor Code section 2699; penalties pursuant to penalties paragraph of the applicable IWC Wage Orders; and attorneys' fees and costs.

## 8. FAILURE TO TIMELY PAY ALL WAGES UPON TERMINATION OF EMPLOYMENT

California Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and if an employee quits his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours' notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

During the relevant time period, upon the termination of employment (including but not limited to when they were temporarily laid off, laid off, discharged, and/or resigned), Aggrieved Employees were not paid all wages due to them within twenty-four (24) hours or even within seventy-two (72) hours for those who resigned. Specifically, as a result of Employers' practices of requiring Aggrieved Employees to work off-the-clock without compensation, failing to pay proper overtime compensation, unlawful rounding practices, failure to properly calculate regular rates, and failure to accurately record all hours actually worked, Employers failed to pay Claimant and Aggrieved Employees for all straight time wage, minimum wages, overtime compensation, and accrued vacation pay owed to them upon termination of their employment. Employers also failed to pay Claimant and Aggrieved Employees for meal period premiums and rest period premiums they were owed, amongst other wages. Accordingly, Employers violated California Labor Code sections 201 and 202.

BLACKSTONE LAW

8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

Claimant and Aggrieved Employees will therefore seek PAGA default penalties pursuant to California Labor Code section 2699; penalties pursuant to California Labor Code sections 203 and 1199; and attorneys' fees and costs.

**9. FAILURE TO PROVIDE SUITABLE SEATING IN COMPLIANCE WITH CALIFORNIA LABOR CODE AND REGULATIONS**

Employers also violated various provisions of California Labor Code section 1198 and related regulations by failing to provide Claimant and other Aggrieved Employees with suitable seating during their shifts. Under California Labor Code section 1198, and the applicable IWC Wage Orders, employers are required to ensure that employees work under conditions that do not violate labor standards, which includes providing seating when the nature of the work reasonably permits it.

Although some of the work performed by Claimant and other Aggrieved Employees could have been done from a seated position without hindering performance, Employers did not provide seats or allow employees to sit during shifts. In particular, much of the work involved tasks that could have been easily carried out from a seated position, such as customer service and working the cash register. However, due to the Employers' policies, Claimant and other Aggrieved Employees were required to stand throughout their shifts without being provided with appropriate seating.

Moreover, Employers failed to inform Claimant and other Aggrieved Employees about their rights to seats under California law. Had they been made aware of these rights, Claimant and Aggrieved Employees would have requested suitable seating. Employers' failure to provide suitable seating or to allow employees to sit during shifts, in violation of state law, further contributed to the unlawful working conditions, which were inconsistent with required labor standards and regulations.

As a result, the failure to provide suitable seating constitutes a violation of California Labor Code section 1198 and applicable wage orders, further compounding Employers' broader pattern of failing to meet state wage and labor law requirements.

**10. CONCLUSION**

Claimant hereby provides notice to the LWDA under the California Labor Code Private Attorneys General Act of 2004, California Labor Code Sections 2698, et seq., and specifically asks for an investigation, or if the agency does not intend to investigate the alleged violations, a letter confirming the same so that Claimant may allege a cause of action under PAGA against Employers for the violations discussed in this letter.

This letter is sent in compliance with the reporting requirements of California Labor Code

BLACKSTONE LAW

8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

section 2699.3. By law, an employee alleging a violation of one of the above-mentioned sections must notify his or her employer and the Labor and Workforce Development Agency (LWDA) before he or she can invoke the provisions of Sections 2699, et seq., by seeking redress in court. Cal. Lab. Code § 2699.3(a)(1). The LWDA must then notify the employer and the employee within 60 calendar days regarding whether it intends to investigate the alleged violation. Cal. Lab. Code § 2699.3(a)(2)(B). If the LWDA advises it will not investigate, or if no notice is provided within 65 calendar days, the employee may file a lawsuit invoking the provisions under Labor Code § 2699. Cal. Lab. Code § 2699.3(a)(2)(A). It is Claimant's intention to file a civil complaint and to bring the appropriate claims under California Labor Code § 2699 on behalf of themselves, the State of California and all Aggrieved Employees should your office not address Employers' alleged violations within this timeframe.

If you have any questions or require additional information, please do not hesitate to contact my office. Thank you for your attention to this matter.

**BLACKSTONE LAW**

*Sage Stone*
Sage S. Stone, Esq.

cc: By U.S. Certified Mail, Return Receipt Requested

Amazon Retail LLC
Agent: CSC - LAWYERS INCORPORATING SERVICE
2710 Gateway Oaks Dr.
Sacramento, CA 95833

# EXHIBIT B

BLACKSTONE LAW

8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

Sage S. Stone, Esq.
sstone@blackstonepc.com

January 13, 2026

**PAGA Claim Notice Via Online Electronic Submission**
California Labor & Workforce Development Agency
800 Capitol Mall, Suite 5000 (MIC-55)
Sacramento, CA 95814
https://dir.govfa.net/412

**RE: *Jacob Sayeedul v. Amazon Retail LLC***

AMENDED PAGA NOTICE

Case No. LWDA-CM-1141370-25

To Whom It May Concern:

This office represents Jacob Sayeedul ("Claimant") with respect to their claims under the California Labor Code against Amazon Retail LLC (including all affiliates, subsidiaries, parents, directors, and officers) (collectively referred to herein as "Employers"). This letter is being sent simultaneously to Employers by certified mail.

Employers employed Claimant from approximately December 2020 to July 2025 as a non-exempt, hourly employee, and from July 2025 to September 2025 as an exempt, salaried Assistant Manager, at the Amazon Fresh store located at 5101 Lankershim Blvd North Hollywood, CA 91601. Employers gave Claimant and similarly aggrieved individuals titles such as "Assistant Manager" or the equivalent and classified them as exempt/salaried employees, while having them continue to perform many of the same tasks as Employers' non-exempt/hourly employees, including: customer service, working the cash register, stocking the shelves, opening and closing the store, receiving deliveries, etc. Because Claimant and Aggrieved Employees' day-to-day duties were less than 50% managerial in nature they should have been classified as non-exempt employees. Instead, Employers misclassified Claimant and Aggrieved Employees as exempt from certain provisions of the California Labor Code, and the orders and standards promulgated by the California Department of Industrial Relations, Industrial Welfare Commission, and Division of Labor Standards, which has resulted in the failure of Employers to pay Claimant and Aggrieved Employees all wages due to them.

Claimant intends to bring a representative action seeking penalties for violations of the

BLACKSTONE LAW

8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

California Labor Code which are recoverable under the Labor Code Private Attorneys General Act of 2004, California Labor Code sections 2698, *et seq*. ("PAGA"). Claimant is seeking penalties on behalf of themself and in a representative capacity on behalf of the State of California and all current and former hourly-paid and/or non-exempt employees and/or exempt but misclassified who worked for Employers in the State of California during the relevant statutory period ("Aggrieved Employees"). This letter is being sent in compliance with California Labor Code section 2699.3 and shall serve as Claimant's notice of the provisions of the California Labor Code alleged to have been violated, including the facts and theories in support thereof.

As detailed below, Employers violated several of California's wage and hour laws during Claimant's employment, including but not limited to California Labor Code sections 201, 202, 203, 204, 226(a), 226.7, 227.3, 510, 512(a), 551, 552, 1174(d), 1194, 1197, 1197.1, 1198, 2800, 2802, and the applicable Industrial Welfare Commission Wage Order ("IWC Wage Order").

In addition, Employers failed to pay Claimant and Aggrieved Employees all wages, premium pay and/or penalties due under the Los Angeles Fair Workweek Ordinance, LAMC Ch. XVIII, Art. 5, Sec. 185 *et seq*. ("LAFWO"), resulting in derivative wage violations under the California Labor Code.

The claims made on behalf of Claimant and Aggrieved Employees are based upon the following facts and theories:

## 1. FAILURE TO PAY FOR ALL TIME WORKED AT CORRECT RATES OF PAY, INCLUDING MINIMUM WAGES, STRAIGHT TIME WAGES, AND OVERTIME COMPENSATION

Employers engaged in numerous unlawful practices which resulted in the failure to pay Claimant and other Aggrieved Employees for all time worked at the correct rates of pay, including minimum wages, straight time wages, and overtime compensation.

California Labor Code sections 1194, 1197, and 1197.1 and IWC Wage Orders require employers to pay at least the legal minimum wage to their employees. California Labor Code sections 510 and 1198 and IWC Wage Orders further require employers to pay no less than one and one-half times the regular rate of pay of the employee for hours worked in excess of eight (8) hours in one workday, for hours worked in excess of forty (40) hours in one workweek, and for the first eight (8) hours worked on the seventh day of work in any one workweek, and to pay no less than twice the regular rate of pay of the employee for hours worked in excess of twelve (12) hours in one workday and for any work in excess of eight (8) hours on any seventh day of a workweek.

Employers failed to accurately record the actual time worked by Claimant and Aggrieved Employees, but Claimant and Aggrieved Employees routinely worked in excess of 40 hours per week and in excess of eight hours per day and were not compensated for any hours worked in

BLACKSTONE LAW

8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

excess of those amounts at either minimum wage, their regular hour rate or at the proper overtime rate, as applicable.

As a result of the foregoing practices, Employers have failed to pay Claimant and other Aggrieved Employees for all wages earned at the correct rates of pay, including minimum wages, straight time wages, and overtime compensation. Accordingly, Employers violated IWC Wage Orders and California Labor Code sections 204, 510, 1194, 1197, 1197.1 and 1198. In addition, Employers failed to pay Claimant and Aggrieved Employees all wages, premium pay and/or penalties due under the LAFWO, resulting in derivative violations of IWC Wage Orders and the California Labor Code.

Claimant and Aggrieved Employees will therefore seek PAGA default penalties pursuant to California Labor Code section 2699; penalties pursuant to penalties paragraph of the applicable IWC Wage Orders; penalties pursuant to California Labor Code sections 558, 1197.1, and 1199; and attorneys' fees and costs.

## 2. FAILURE TO PROVIDE MEAL PERIODS AND PAY MEAL PERIOD PREMIUMS

California law requires employers to provide employees with an opportunity to take an uninterrupted meal period of no less than thirty (30) minutes before the end of the fifth hour of work when an employee works more than five (5) hours in a day. Cal. Lab. Code §§ 226.7, 512(a). A second meal period of no less than thirty (30) minutes must be provided before the end of the tenth hour of work when an employee works more than ten (10) hours in a day. Cal. Lab. Code §§ 226.7, 512(a). When an employer fails to provide a meal or rest period, an hour of pay at the employee's regular rate of compensation is owed to the employee. Cal. Lab. Code § 226.7(c).

During the relevant time period, Employers failed to provide Claimant and other Aggrieved Employees with legally-compliant 30-minute meal periods. Claimant and other Aggrieved Employees were required by Employers to work more than five (5) hours per day, but were not provided with uninterrupted 30-minute meal periods. Further, Claimant and other Aggrieved Employees were not provided with a second uninterrupted 30-minute meal period when they worked over ten (10) hours per day. Employers regularly required Claimant and other Aggrieved Employees to work through their first and second meal periods, to take their first meal period after their fifth (5th) hour of work, and/or to take their second meal periods after their tenth (10th) hour of work. Meal periods, when provided, were oftentimes interrupted or cut short.

Employers' policies, practices, and procedures were responsible for the violations alleged above and prevented Claimant and other Aggrieved Employees from taking timely, complete and duty-free meal periods because, amongst other reasons: (1) Employers did not have legally-compliant policies regarding the provision and timing of meal periods or systematically

BLACKSTONE LAW

8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

disregarded its own purported meal period policies; (2) Employers' management at various levels failed and refused to implement and enforce legally compliant meal period policies and practices; (3) Employers failed to adequately inform and train Claimant and other Aggrieved Employees regarding their right to take timely, uninterrupted, and duty-free meal periods; (4) Employers failed to adequately inform and train Claimant and other Aggrieved Employees about their right to premium wages for non-compliant meal periods; (5) Employers failed to ensure that there was adequate staffing to allow Claimant and other Aggrieved Employees to take timely, uninterrupted, and duty-free meal periods; (6) Employers required Claimant and other Aggrieved Employees to respond to work-related requests at all times, including during meal periods; and (7) Employers' policy and culture prevented Claimant and other Aggrieved Employees from taking timely, uninterrupted, and duty-free meal periods because of the priority placed on maximizing profits over employees' right to receive timely, uninterrupted, and duty-free meal periods.

Claimant and other Aggrieved Employees did not receive an extra hour of wages at their regular rate of pay for the meal periods which were not provided to them in compliance with California law. Accordingly, Employers violated the applicable IWC Wage Orders and California Labor Code sections 226.7, 512(a) and 1198.

Claimant and Aggrieved Employees will therefore seek PAGA default penalties pursuant to California Labor Code section 2699; penalties pursuant to penalties paragraph of the applicable IWC Wage Orders; penalties pursuant to California Labor Code sections 558 and 1199; and attorneys' fees and costs.

**3. FAILURE TO AUTHORIZE AND PERMIT REST PERIODS AND PAY REST PERIOD PREMIUMS**

California law requires employers to authorize and permit employees to take an uninterrupted rest period of no less than ten (10) minutes rest for every four (4) hours, or major fraction thereof, worked. Cal. Lab. Code § 226.7. When an employer fails to authorize and permit a rest period, an hour of pay at the employee's regular rate of compensation is owed to the employee. Cal. Lab. Code § 226.7(c).

Employers failed to authorize and permit Claimant and other Aggrieved Employees to take legally-compliant 10-minute rest periods. Employers required Claimant and other Aggrieved Employees to work through rest periods. Claimant and Aggrieved Employees were not provided with uninterrupted, duty-free rest periods when they worked more than four (4) hours or a major fraction thereof. Further, Claimant and other Aggrieved Employees were not provided with a second uninterrupted, duty-free rest period when they worked more than six (6) hours in a day, or a third uninterrupted, duty-free rest period after working more than ten (10) hours in day. In the

BLACKSTONE LAW
8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

rare event that a rest period was taken, it was frequently interrupted or cut short. Moreover, Claimant and other Aggrieved Employees were not completely relieved of duty as required by *Augustus v. ABM Security Services, Inc.,* 2 Cal.5th 257 (2016).

Employers' policies, practices, and procedures were responsible for the violations alleged above and prevented Claimant and other Aggrieved Employees from taking timely and complete rest periods because, amongst other reasons: (1) Employers did not have legally-compliant policies regarding the provision and timing of rest periods or systematically disregarded its own purported rest period policies; (2) Employers' management at various levels failed and refused to implement and enforce legally compliant rest period policies and practices; (3) Employers failed to adequately inform and train Claimant and other Aggrieved Employees regarding their right to take timely, uninterrupted, and duty-free rest periods; (4) Employers failed to adequately inform and train Claimant and other Aggrieved Employees about their right to premium wages for non-compliant rest periods; (5) Employers failed to ensure that there was adequate staffing to allow Claimant and other Aggrieved Employees to take timely, uninterrupted, and duty-free rest periods; (6) Employers required Claimant and other Aggrieved Employees to respond to work-related requests at all times, including during rest periods; and (7) Employers' policy and culture prevented Claimant and other Aggrieved Employees from taking timely, uninterrupted, and duty-free rest periods because of the priority placed on completing job requirements over employees' right to receive rest periods.

Claimant and other Aggrieved Employees did not receive an extra hour of wages at their regular rate of pay for the rest periods which were not provided to them in compliance with California law. Accordingly, Employers violated the applicable IWC Wage Orders and California Labor Code sections 226.7, and 1198.

Claimant and Aggrieved Employees will therefore seek PAGA default penalties pursuant to California Labor Code section 2699; penalties pursuant to penalties paragraph of the applicable IWC Wage Orders; Labor Code sections 558 and 1199 penalties; and attorneys' fees and costs.

**4. FAILURE TO TIMELY PAY WAGES DURING EMPLOYMENT**

California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month. California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the

BLACKSTONE LAW

8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

next regular payroll period. During the relevant time period, Employers have failed to timely pay all wages earned because Claimant and other Aggrieved Employees were not paid all the wages they were owed including, *inter alia*: overtime compensation; straight time wages; minimum wages; meal and rest period premiums; and wages, premium pay and/or penalties due under the LAFWO. Accordingly, Employers violated California Labor Code section 204(a).

Claimant and Aggrieved Employees will therefore seek PAGA default penalties pursuant to Labor Code section 2699; penalties pursuant to California Labor Code sections 210 and 1199; and attorneys' fees and costs.

**5. FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS**

California Labor Code section 226(a) requires an employer semimonthly or at the time of each payment of wages to furnish wage statements to its employees setting forth, *inter alia*, (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, and (8) the name and address of the legal entity that is the employer.

As a result of the practices described herein, the wage statements provided to Claimant and other Aggrieved Employees failed to include the actual hours worked (including time spent working off-the-clock), the actual gross wages earned (including wages owed for time spent working off the clock; meal and rest period premiums; and wages, predictability pay and/or other premium pay owed under the LAFWO), and the correct rates of pay. Accordingly, Employers violated California Labor Code section 226(a).

Claimant and Aggrieved Employees will therefore seek PAGA default penalties; penalties pursuant to California Labor Code section 226.3; and attorneys' fees and costs.

**6. FAILURE TO MAINTAIN ACCURATE RECORDS**

California Labor Code section 1174(d) requires an employer to keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept with rules established for this purpose by the

BLACKSTONE LAW

8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

commission, but in any case, shall be kept on file for not less than two years. During the relevant time period, Employers have failed to maintain accurate records relating to Claimant and other Aggrieved Employees' work periods, meal periods, total daily hours worked, and total hours worked per payroll period. Accordingly, Employers violated the applicable IWC Wage Orders and California Labor Code sections 1198.5 and 1174(d).

Claimant and Aggrieved Employees will therefore seek PAGA default penalties pursuant to California Labor Code section 2699; penalties pursuant to penalties paragraph of the applicable IWC Wage Orders; California Labor Code section 1174.5 penalties; and attorneys' fees and costs.

## 7. FAILURE TO REIMBURSE NECESSARY EXPENDITURES

California Labor Code sections 2800 and 2802 require an employer to reimburse its employees for all necessary expenditures incurred by the employee in direct consequence of the discharge of his or her job duties or in direct consequence of his or her obedience to the directions of the employer. The IWC Wage Orders require employers to provide employees with the tools or equipment necessary for the performance of their job. During the relevant time period, Claimant and Aggrieved Employees incurred necessary business-related expenses and costs that were not fully reimbursed by Employers. These costs include but are not limited to the purchase of shirts and pants for work uniform and the usage of personal cell phones for work-related purposes.

Accordingly, Employers violated the IWC Orders and California Labor Code sections 2800 and 2802. Claimant and Aggrieved Employees will therefore seek PAGA default penalties pursuant to California Labor Code section 2699; penalties pursuant to penalties paragraph of the applicable IWC Wage Orders; and attorneys' fees and costs.

## 8. FAILURE TO TIMELY PAY WAGES UPON TERMINATION OF EMPLOYMENT

California Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and if an employee quits his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours' notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

During the relevant time period, upon the termination of employment (including but not limited to when they were temporarily laid off, laid off, discharged, and/or resigned), Aggrieved Employees were not paid all wages due to them within twenty-four (24) hours or even within seventy-two (72) hours for those who resigned. Specifically, as a result of Employers' practices of requiring Aggrieved Employees to work off-the-clock without compensation, failing to pay proper

BLACKSTONE LAW

8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

overtime compensation, failure to properly calculate regular rates, failure to accurately record all hours actually worked, and failure to comply with the LAFWO, Employers failed to pay Claimant and Aggrieved Employees for all straight time wage, minimum wages, overtime compensation, accrued vacation pay, and premium pay and/or penalties due under the LAFWO owed to them upon termination of their employment. Employers also failed to pay Claimant and Aggrieved Employees for meal and rest period premiums they were owed, amongst other wages. Accordingly, Employers violated California Labor Code sections 201 and 202.

Claimant and Aggrieved Employees will therefore seek PAGA default penalties pursuant to California Labor Code section 2699; penalties pursuant to California Labor Code sections 203 and 1199; and attorneys' fees and costs.

**9. FAILURE TO PROVIDE SUITABLE SEATING IN COMPLIANCE WITH CALIFORNIA LABOR CODE AND REGULATIONS**

Employers also violated various provisions of California Labor Code section 1198 and related regulations by failing to provide Claimant and other Aggrieved Employees with suitable seating during their shifts. Under California Labor Code section 1198, and the applicable IWC Wage Orders, employers are required to ensure that employees work under conditions that do not violate labor standards, which includes providing seating when the nature of the work reasonably permits it.

Although some of the work performed by Claimant and other Aggrieved Employees could have been done from a seated position without hindering performance, Employers did not provide seats or allow employees to sit during shifts. In particular, much of the work involved tasks that could have been easily carried out from a seated position, such as customer service and working the cash register. However, due to the Employers' policies, Claimant and other Aggrieved Employees were required to stand throughout their shifts without being provided with appropriate seating.

Moreover, Employers failed to inform Claimant and other Aggrieved Employees about their rights to seats under California law. Had they been made aware of these rights, Claimant and Aggrieved Employees would have requested suitable seating. Employers' failure to provide suitable seating or to allow employees to sit during shifts, in violation of state law, further contributed to the unlawful working conditions, which were inconsistent with required labor standards and regulations.

As a result, the failure to provide suitable seating constitutes a violation of California Labor Code section 1198 and applicable wage orders, further compounding Employers' broader pattern of failing to meet state wage and labor law requirements.

**10. CONCLUSION**

BLACKSTONE LAW

8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

Claimant hereby provides notice to the LWDA under the California Labor Code Private Attorneys General Act of 2004, California Labor Code Sections 2698, et seq., and specifically asks for an investigation, or if the agency does not intend to investigate the alleged violations, a letter confirming the same so that Claimant may allege a cause of action under PAGA against Employers for the violations discussed in this letter.

This letter is sent in compliance with the reporting requirements of California Labor Code section 2699.3. By law, an employee alleging a violation of one of the above-mentioned sections must notify his or her employer and the Labor and Workforce Development Agency (LWDA) before he or she can invoke the provisions of Sections 2699, et seq., by seeking redress in court. Cal. Lab. Code § 2699.3(a)(1). The LWDA must then notify the employer and the employee within 60 calendar days regarding whether it intends to investigate the alleged violation. Cal. Lab. Code § 2699.3(a)(2)(B). If the LWDA advises it will not investigate, or if no notice is provided within 65 calendar days, the employee may file a lawsuit invoking the provisions under Labor Code § 2699. Cal. Lab. Code § 2699.3(a)(2)(A). It is Claimant's intention to file a civil complaint and to bring the appropriate claims under California Labor Code § 2699 on behalf of themselves, the State of California and all Aggrieved Employees should your office not address Employers' alleged violations within this timeframe.

If you have any questions or require additional information, please do not hesitate to contact my office. Thank you for your attention to this matter.

**BLACKSTONE LAW**

Sage Stone
Sage S. Stone, Esq.

cc: By U.S. Certified Mail, Return Receipt Requested

Amazon Retail LLC
Agent: CSC - LAWYERS INCORPORATING SERVICE
2710 Gateway Oaks Dr.
Sacramento, CA 95833

# EXHIBIT C

BLACKSTONE LAW

8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

September 3, 2026

Sage S. Stone, Esq.
sstone@blackstonepc.com
Zachary T. Gershman, Esq.
zgershman@blackstonepc.com
Matthew R. Soto, Esq.
msoto@blackstonepc.com

Amazon Retail, LLC and Amazon.com, Inc.
c/o Brian D. Fahy, Mason J. Hattam
Morgan, Lewis & Bockius LLP
300 South Grand Avenue, Twenty-Second Floor
Los Angeles, CA 90071-3132
brian.fahy@morganlewis.com
mason.hattam@morganlewis.com

**Los Angeles Fair Workweek Ordinance Claim Notice**

**RE:** ***Jacob Sayeedul et al. v. Amazon Retail, LLC et al.***

To Whom It May Concern:

This office represents Jacob Sayeedul, Jeffrey Allton, Ashley Blair Steely, Joseph Vasconcelos, Teena Marie Ojeda, and Agustin Rodriguez ("Plaintiffs") with respect to their claims under the Los Angeles Fair Workweek Ordinance against Amazon.com, Inc., and Amazon Retail, LLC. (including all affiliates, subsidiaries, parents, directors, and officers) (collectively referred to herein as "Amazon").

Amazon employed Jacob Sayeedul from approximately December 2, 2020, to September 16, 2025. Beginning in March 2022, Mr. Sayeedul held the title of "Assistant Manager" (Job Level 4 or "L4"). On or around July 2025 he was offered an internal transfer to Assistant Manager in North Hollywood and was generally stationed at Amazon's North Hollywood, CA location, but performed work all across Southern California, including at stores in Woodland Hills, Northridge, and Ladera Heights.

Mr. Alton worked for Amazon from approximately December 2020 to January 27, 2024. Mr. Allton held the title of "Overnight Manager," an L4 Job, at Amazon's Woodland Hills, CA location.

Mr. Steely worked for Amazon as an Assistant Manager from approximately May 2021 to February 28, 2025. Mr. Steely worked at Amazon's North Hollywood, Northridge, and Woodland Hills, CA location.

BLACKSTONE LAW

8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

Mr. Vasconcelos worked for Amazon from approximately February 2020 to April 28, 2026. Mr. Vasconcelos worked for Amazon as both an L4 and L5 Assistant Store Manager and Assistant Manager at Amazon' Woodland Hills and North Hollywood, CA locations.

Ms. Ojeda worked for Amazon from approximately February 15, 2021, to April 28, 2026. Beginning in May 14, 2021, Ms. Ojeda held the title of "Zone Lead" (Job Level "L3") then November 1, 2021 changed to Level L4 at Amazon's Cerritos, Long Beach, and Fullerton CA locations.

Mr. Rodriguez worked for Amazon from approximately April 14, 2023, to April 28, 2026. Mr. Rodriguez held the title of "Store Manager" (Job Level "L6") at Amazon's Ladera Heights and Torrance CA location.

Plaintiff Jacob Sayeedul previously provided notice of his anticipated claims under the Fair Workweek Ordinance in a correspondence dated January 13, 2026. As set forth below, Amazon violated Los Angeles Municipal Code section 185.00 et seq. as to Plaintiffs and the putative class, which is defined as follows: All current and former employees of Amazon who worked for Amazon as Assistant Managers or Managers, also known as L4, L5, or L6 employees, in the State of California at any time during the period from four years prior to the date of the filing of this Complaint through final judgment.

This letter is being sent in compliance with Los Angeles Municipal Code section 188.05 and shall serve as Plaintiffs' notice of the provisions of the Los Angeles Municipal Code alleged to have been violated, including the facts and theories in support thereof.

The claims made on behalf of Plaintiffs and the putative class are based upon the following facts and theories:

**LOS ANGELES FAIR WORKWEEK ORDINANCE VIOLATIONS**

In response to a UCLA study showing widespread unpredictability in work scheduling of retail workers, the Los Angeles City Council enacted LAMC Ch. XVIII, Art. 5, section 185, et seq, known as the Fair Work Week Ordinance (hereafter "FWWO" or "LAMC § 185").

The purpose of the FWWO is to promote the health, safety, and welfare of retail workers by providing them with a more predictable work schedule that ensures stability for themselves and their families. The FWWO went into effect on April 1, 2023, with full enforcement beginning on September 28, 2023.

The FWWO requires covered employers to, among other things: (1) provide employees a good faith estimate of their work schedules (LAMC § 185.02); (2) compensate employees at one and one-half times their regular rate of pay for working shifts beginning less than ten hours from the prior shift, aka "clopening" (LAMC § 185.08); (3) provide employees with at least 14 days' notice of their work schedules (LAMC § 185.04.A); (4) provide notice of all work schedule

BLACKSTONE LAW

8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

changes in writing (LAMC § 185.04.B); and (5) pay premium wages in the form of Predictability Pay when an employer makes certain non-compliant schedule changes**.**

The FWWO also prohibits employers from requiring employees to find their own coverage for scheduled hours when work is missed due to illness or some other protected purpose. (LAMC § 185.07). A covered employer under the FWWO is a retail business with 300 or more employees globally, with certain exceptions not relevant here. At all relevant times, Amazon were covered employers under LAMC § 185 et seq.

A covered employee under the FWWO is any individual performing at least two hours of work within the geographic boundaries of the City of Los Angeles for a covered employer and who is entitled to earn the California minimum wage. At all relevant times, Plaintiffs and the putative Class Members who worked in the City of Los Angeles were covered employees under LAMC § 185.

Plaintiffs and the Class Members were subject to unpredictable scheduling practices, last-minute schedule change requests, working back-to-back shifts less than ten hours apart, and other practices prohibited under the FWWO.

Amazon regularly scheduled Plaintiffs and the Class Members to work “clopening” shifts, but did not pay them at a rate time and one-half for these shifts. Instead, properly classified, non-exempt employees were paid at their regular rate, while misclassified employees were paid no additional wages beyond their salary, regardless of being required to work “clopening” shifts.

Amazon regularly subjected Plaintiffs and the Class Members to schedule changes that were not timely, not in writing, or both, yet Amazon never paid premium wages (sometimes referred to as “Predictability Pay”) to Plaintiffs and Class Members when this occurred.

Amazon’ failure to adhere to the FWWO scheduling rules or pay the associated premium wages to Plaintiffs and Class Members as required violates LAMC § 185, et seq. Pursuant to LAMC §§ 185.06 and 188.07, Plaintiffs and the other Class Members are entitled to recover unpaid wages and/or premium pay, Predictability Pay, statutory damages, injunctive relief, and reasonable attorneys’ fees, expenses, and costs.

Through 2023, Amazon required Store Managers to prepare and disseminate schedules of the Assistant Managers for a given store. Amazon trained Store Managers to disseminate schedules in the week leading up to the next month. For example, schedules for February would be released the last week of January. Regional Managers prepared and disseminated schedules for Store Managers.

Amazon required Assistant Managers to rotate shifts multiple times a week. This had the unfortunate effect of requiring managers to work “clopening” shifts — managers would be scheduled to work until 11pm (a 10 hour shift), and then would be scheduled to report to work the next morning at 8am, less than 10 hours later.

BLACKSTONE LAW

8383 Wilshire Blvd., Suite 745
Beverly Hills, CA 90211
Phone: (310) 622-4278
Fax: (855) 786-6356

From April 2023 until his last day worked in August 2025, at least once a week Mr. Sayeedul would work the closing shift, scheduling him until 11pm (and would very often work later), and then would be scheduled to work at 8am the next day.

Amazon frequently changed managers' schedules at the last-minute resulting in additional work time greater than 15 minutes, thus entitling Plaintiffs to a premium of an hour of pay at regular rate.

Furthermore, Amazon would require Plaintiffs and other class members to work additional hours if another manager called off sick, failing to provide the additional notice time necessary under the Los Angeles Municipal Code, and failing to provide such notice in writing.

Accordingly, Amazon regularly violated the FWWO by, among other things, failing to adhere to predictable scheduling rules and by failing to provide premium wages to employees when this occurred.

If you have any questions or require additional information, please do not hesitate to contact our office. Thank you for your attention to this matter.

**BLACKSTONE LAW**

**/s/ Sage S. Stone, Esq.**

Sage S. Stone, Esq.
Zachary T. Gershman, Esq.
Matthew R. Soto, Esq.